# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 18, 2010

## STATE OF TENNESSEE v. ARCHIE HILL, JR.

### Direct Appeal from the Circuit Court for Franklin County
### Nos. 18025 & 18364     Buddy D. Perry, Judge

### No. M2010-00093-CCA-R3-CD - Filed November 2, 2010

The Defendant, Archie Hill, Jr., pled guilty to one count of aggravated burglary and one count of burglary. The trial court sentenced him to seven years, with the Defendant to serve eleven months and twenty-nine days in confinement and then be released to probation. Soon after the Defendant began serving his probation sentence, a violation of probation affidavit was filed against the Defendant. After a hearing, the trial court revoked the Defendant's probation sentence and ordered him to serve the remainder of his sentence in confinement. The Defendant appeals, contending the trial court erred in placing into effect his original sentence. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Robert G. Morgan (at trial and on appeal) and Philip A. Condra (on appeal), Jasper, Tennessee, for the Appellant, Archie Hill, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Clarence E. Lutz, Assistant Attorney General; J. Michael Taylor, District Attorney General; Steve Blount, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

In April 2009, the Defendant pled guilty to the burglary of a Franklin County church and the aggravated burglary of a private residence. The trial court sentenced him to seven years, with eleven months and twenty-nine days to be served in confinement and the balance on probation. The trial court placed the Defendant on furlough from jail and ordered him, as a "strict requirement of his sentence and probation," to complete the residential program with the Transformation Project. The trial court also ordered the Defendant to "stay away from the [church's] property at all times."

In September 2009, the trial court issued a warrant for the Defendant's arrest based upon a violation of probation affidavit, which alleged the Defendant violated his probation by abandoning the Transformation Project rehabilitation program. The Transformation Project president, Wayne Keylon, submitted a "NOTICE OF FAILURE TO COMPLY" with the trial court, describing the Defendant's participation in the Transformation Project:

> At first [the Defendant] seemed to be completely embracing the opportunity to be in our program rather than serving his sentence in prison. However, within 4 days he was combative with House of Refuge staff members. [The Defendant] has failed to comply numerous [times] but has seemed to be able to regain his focus to continue with out program partnership. However, on September 11, 2009, [the Defendant], upon being notified that he would be going back to jail, left the program property, effectively going AWOL.

The trial court held a revocation hearing. At the commencement of the hearing, the parties announced a stipulation about the testimony of two witnesses, Joel Davenport and Sheriff Fuller. They stipulated that, were Davenport, the director of the Transformation Project, to have testified, he would have confirmed that, within the first week of the Defendant's enrollment in the Transformation Project, the Defendant had considerable difficulty complying with certain terms of the program. Program directors considered sending the Defendant back to jail. They allowed the Defendant, however, to remain in the program, but more problems soon arose. Drug use occurred among members of the program, including the Defendant. The Defendant soon thereafter left the Transformation Project without completing the program. According to Davenport, though the Defendant did not complete the program, his behavior had improved. Davenport cited the Defendant's immediate notification of the Franklin County Sheriff's Department that he left the Transformation Project and returned to Franklin County as evidence the Defendant was increasingly rule-abiding. The parties stipulated that Sheriff Fuller would have confirmed that the Defendant telephoned him, saying he would turn himself in if the Sheriff's Department received a warrant for his arrest.

2

Wayne Keylon, president of the Transformation Project, testified that, during the Petitioner's enrollment in the Transformation Project, the Petitioner lived in a residential facility, House of Refuge, which provides transitional housing to some of the Transformation Project participants. Keylon received a phone call from the director of the Transformation Project, who reported that the Petitioner was not complying with the rules of the transitional home. The rule the Petitioner had the most difficulty with was a prohibition against indoor smoking. The director said the Petitioner in general was a "non-conformist" because he resisted most of the house rules. The director informed Keylon the House of Refuge had decided to dismiss the Petitioner from the house.

Keylon explained that, when a court-ordered participant in his residential program is dismissed from either the transitional home or the rehabilitation program, he is obliged to deliver the participant to the Sheriff's Department of the county that sentenced the participant. Accordingly, when the Petitioner was dismissed from the House of Refuge, Keylon phoned the Petitioner on a Friday and instructed him to wait at the transitional house until the following Monday, when he would pick the Petitioner up and transport him back to the Franklin County Sheriff's Department. When Keylon arrived on Monday, however, he was informed the Petitioner had returned on his own to Franklin County over the weekend.

On cross-examination, Keylon confirmed that the Defendant's compliance issues stemmed from his enrollment in the House of Refuge and not from his participation in the Transformation Project. He said he did not know whether illegal drugs were being used at the House of Refuge, as the Defendant had reported. On redirect examination, he confirmed that, as a condition of his probation, the Defendant was required to stay in a transitional house while completing the Transformation Project.

The Defendant testified that he was one of ten children raised in Norfolk, Virginia, by parents with drug abuse issues. He began using drugs at age twelve and committed various misdemeanors and felonies, which resulted in his being jailed and imprisoned. As an adult living with his girlfriend in Tullahoma, Tennessee, he won a lottery prize of $50,000. At some point before this, the Defendant had ceased abusing drugs, and this money soon led him back to drug abuse. Thereafter, he was arrested, and his girlfriend obtained an order of protection against him. Unable to return to the home he had shared with his girlfriend, once he was released from jail he was homeless and began abusing crack cocaine. To feed his drug habit, he burglarized a church and a private residence. Authorities apprehended and charged the Defendant for these burglaries, and the conviction and probation sentence the Defendant received for this conduct underlie the present appeal.

While enrolled in the Transformation Project, the Defendant worked two jobs and joined a steel workers' union. The Defendant soon began to take issue with several things that were happening at the House of Refuge, the transitional house in which he was living. He communicated his concerns to Keylon over the telephone. The Defendant testified that he never abused drugs while living at the House of Refuge and only once drank a beer during a Fourth of July celebration. Having had enough of the House of Refuge, he telephoned Keylon and told him he planned to leave Chattanooga and return to Tullahoma. According to the Defendant, Keylon discouraged him from doing so but said he could leave as long as he stayed in contact. The Defendant denied that Keylon told him to wait in Chattanooga in order for Keylon to pick him up on Monday.

Having caught wind of the Defendant's plans to leave, several of the program directors of the Project and the transitional home met with the Defendant and told him they disapproved of his leaving. The Defendant left anyway, collecting money from friends to pay for his transportation to Tullahoma. Before he left, he called the Franklin County Sheriff's Department, advising them he planned to return from the rehabilitation house. When he arrived in Tullahoma, he checked into a hotel and notified the Sheriff's Department that he could be found at the hotel in the event they obtained a warrant for his arrest. That Sunday, he attended the church he burglarized, and he apologized for having burglarized the church  The next day, officers arrested the Defendant at the hotel for violation of his probation.

On cross-examination, the Defendant confirmed he understood when he pled guilty and received a probation sentence that he would live in a halfway house, where he would live with several other people with substance abuse issues. He confirmed he had never successfully completed a term of probation, but he said he did not feel he had "failed" at completing the probation sentence at issue. He explained that, because he would eventually have resumed using drugs had he stayed at the House of Refuge, he was justified in leaving and returning to Tullahoma. He explained that he did not ask his attorney to petition the court to allow him to complete rehabilitation elsewhere because he did not understand this was an option. He also said he did not know how to contact his attorney.

Based upon this evidence, the trial court found that the Defendant violated his probation and placed his original sentence into effect. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends the trial court erred when it revoked his probation because it failed to support its revocation with a finding that the Defendant absconded from his mandatory treatment program, and the Defendant argues the record does not support such a finding. He argues that, though he left the treatment program, he did so under circumstances that did not amount to "absconding." Finally, the Defendant, relying upon *State v. Laura June Mays*, argues that the trial court should have supported its revocation with findings concerning the Defendant's reason for leaving the treatment program. No. W2007-00319-CCA-R3-CD, 2008 WL 1700227 (Tenn. Crim. App., at Jackson, Apr. 8, 2008), *affirmed upon remand State v. Mays*, No. W2008-02144-CCA-R3-CD, 2010 WL 271269 (Tenn. Crim. App., at Jackson, Jan. 25, 2010).

The State responds that, due to the Defendant's admission that he left without completing the treatment program, the trial court was within its discretion to revoke the Defendant's probation and order him to serve the remainder of his sentence in confinement.

When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. T.C.A. § 40-35-311(e) (2006). Upon finding that the defendant has violated the conditions of probation, the trial court may revoke probation and either: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for up to two additional years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); *see* T.C.A. § 40-35-308, -310, -311 (2006). The defendant has the right to appeal the revocation of his probation and entry of his original sentence. T.C.A. § 40-35-311(e). After finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." *Id.*; *accord Hunter*, 1 S.W.3d at 646 (holding that the trial court retains the discretionary authority to order the defendant to serve his or her original sentence in confinement). Furthermore, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension . . . ." T.C.A. § 40-35-310 (2006).

The decision to revoke probation is in the sound discretion of the trial judge. *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). This Court will uphold a trial court's judgment to revoke probation unless the trial court abused its discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. *Id.*; *State v.*

5

*Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

In this case, at the conclusion of the revocation hearing, the trial court read the Defendant's criminal history from the probation report. The Defendant was convicted of several burglaries in 1989 and 1991. He was granted parole in October 1994, but this parole was revoked in April 1995. He was again granted parole in April 1996, but he absconded from supervision in January 2000, so his parole was again revoked, and he served the remainder of his sentence in confinement. The trial court acknowledged that the Defendant sent several letters to the trial court requesting not to be returned to jail. The trial court noted that the letters demonstrated the Defendant had considerable talent, which the trial court hoped the Defendant would cultivate when it previously ordered the Defendant to complete rehabilitation. It explained that, because the Defendant again violated probation, it had "no choice" but to revoke his probation and order him to serve the remainder of his sentence in confinement.

We first note that, contrary to the Defendant's assertion, the trial court had no obligation to justify its revocation of the Defendant's probation by finding that the Defendant "wilfully" abandoned the rehabilitation program. The rule of law requiring a finding of wilfulness to accompany each probation revocation based upon a defendant's failure to pay court fines or costs has no application here. The completion of a residential rehabilitation program was a "strict requirement" of the Defendant's probation, and any failure to meet that requirement placed the Defendant in violation of his probation.

The evidence in this case shows that, as a condition of his probation, the Defendant was ordered to complete the residential treatment program with the Transformation Project in Chattanooga. He also was ordered to stay away from the Franklin County church he burglarized. Almost from the outset, however, the Defendant resisted the rules of the transitional home in which he lived as a condition of his participation in the Transformation Project. The Defendant soon became "combative" with house management, who concluded the Defendant should be dismissed from the house. The Defendant's dismissal from the residential home placed him in violation of the terms of his probation sentence. Thus, Keylon was obliged to return the Defendant to the Franklin County Jail. After Keylon informed the Defendant that in three days he would pick the Defendant up from Chattanooga and transport him to Franklin County, the Defendant preempted Keylon and returned to Franklin County on his own. The Defendant notified the Franklin County Sheriff's Department of his return. On Sunday, the Defendant visited a service of the church he had burglarized, and he apologized for his conduct.

6

We conclude the record contains substantial evidence that the Defendant violated the terms of his probation, not only by failing to complete the residential rehabilitation program at the Transformation Project. Thus, the evidence does not preponderate against the trial court's finding that the Defendant violated his probation. *See* T.C.A. § 40-35-311(e). We conclude that, because the evidence that the Defendant violated his probation was abundant, the trial court did not abuse its discretion when it revoked the Defendant's probation. *See Harkins*, 811 S.W.2d at 82. The Defendant is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE