# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 27, 2011

## STATE OF TENNESSEE v. TIFFANY NICOLE NANCE

**Direct Appeal from the Criminal Court for Knox County**
No. 90658B    Richard Baumgartner, Judge

---

**No. E2011-00492-CCA-R3-CD - Filed October 20, 2011**

---

The Defendant, Tiffany Nicole Nance, pled guilty to theft of property valued under $500, with an agreed sentence of eleven months and twenty-nine days to be served on probation. A probation violation warrant was issued, and, after a hearing, the trial court revoked the Defendant's probation, finding that she had violated the terms of her probation. The court ordered her to serve sixty days of her sentence in confinement, followed by a reinstatement of her probation. On appeal, the Defendant contends the evidence is insufficient to sustain the trial court's revocation of her probation. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined. J.C. MCLIN, J.,[1] not participating.

Joshua D. Hedrick, Knoxville, Tennessee, for the Appellant, Tiffany Nicole Nance.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Keith Irvine, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts

---

[1] The Honorable J.C. McLin died September 3, 2011, and did not participate in this opinion. We acknowledge his faithful service to this Court.

This case arises from the Defendant's theft of property from a Marshall's store in Knox County in May 2008. In February 2010, the Defendant pled guilty to theft of property valued under $500, a Class A misdemeanor, with an agreed sentence of eleven months and twenty-nine days to be served on probation. In October 2010, the Defendant's probation officer filed a probation violation warrant, alleging that the Defendant had violated her probation sentence by: (1) being arrested for disorderly conduct on September 10, 2010; (2) being arrested for aggravated assault and vandalism on September 30, 2010; (3) and failing to provide proof of payment of court costs and probation fees.

At a revocation hearing on November 11, 2010, Officer Colin McLeod of the Knoxville Police Department testified that he investigated an incident on September 28, 2010, that involved the Defendant. Officer McLeod interviewed the victim, Kenneth Lorenzo Jackson, at the hospital, describing his impressions of the victim during the interview as follows: "My impressions were that he was in fear for his safety, that he was injured, and he had a very strong odor of bleach on his person. I could not at that time determine if he was intoxicated." During this interview Jackson told the officer that the Defendant was his girlfriend and that the two had been in an argument about Jackson's use of an ex-girlfriend's car. Jackson described the argument as growing "heated," and he said the Defendant pulled out a folding knife and chased him around the yard of his house while swinging the knife at him. Officer McLeod recalled that Jackson gave a "detailed description" of the knife as a black-handled folding knife. While Jackson did not initially realize it, the Defendant at some point cut Jackson on his right arm.

Officer McLeod testified that Jackson told him that, during the argument, the Defendant ran inside Jackson's house and returned with a cup of bleach. The Defendant threw the cup of bleach at Jackson, and it landed on his shirt. Jackson explained that, by this point, he had grown angry with the Defendant, so he spit on her. Thereafter, the Defendant went inside Jackson's house and placed a phone call, after which her three sons arrived and began yelling at Jackson. Officer McLeod recalled that Jackson told the officer that he shut the front door and physically held it closed because the door lock was broken. At some point, seven rounds were fired from the outside of the house through the front door, with one round striking Jackson's left forearm. Jackson said that the Defendant's three sons then fled in two cars.

Officer McLeod testified that Jackson did not make any statement as to the Defendant's whereabouts during the shooting. Based on other witness statements, however, the officer believed the Defendant was waiting in the second of two cars, both of which fled the scene after the shooting.

2

After interviewing Jackson, Officer McLeod went to the scene and found evidence supporting Jackson's statement regarding the incident. Officer McLeod found a shirt covered in bleach, a blue plastic cup that appeared to have bleach in it, six shell casings in the front yard, and seven bullet holes in the front door and adjacent wall.

Officer McLeod testified that he interviewed several witnesses while at the scene, one of whom was Jackson's roommate. Jackson's roommate told the officer that he had heard the Defendant and Jackson arguing and saw the Defendant run outside with bleach. Later, after shots were fired, the roommate heard Jackson yelling for him to call 911. Officer McLeod said that he also interviewed two witnesses that were across the street from the residence during the argument and shooting. These two witnesses were unable to identify the suspects that were involved but recounted the incident consistent with the victim's statement to Officer McLeod. They also said that a white vehicle and a black vehicle fled the scene. Officer McLeod testified that Jackson had told him that the Defendant drove a white vehicle.

On cross-examination, Officer McLeod agreed that he could not confirm the identity of the person the Defendant called from inside Jackson's house shortly before her three sons arrived. Officer McLeod also agreed that no one alleged that the Defendant had a weapon or fired any of the shots at Jackson. Officer McLeod explained that the aggravated assault charge was based on the knife the Defendant used against the victim.

Jackson testified that he initially believed the Defendant had a knife but found out the next day that "she didn't have no knife." Jackson explained that he cut his arm on the door while being chased by the Defendant. At this point in Jackson's testimony, the trial court continued the hearing for a week to give Jackson an opportunity to speak with an attorney before testifying. On November 18, 2010, the parties reconvened and defense counsel continued direct examination of Jackson. Jackson testified that he had been drinking alcohol the night of this incident, and he and the Defendant "got into a little argument." Jackson recalled that he was "talkin' crazy" to the Defendant and calling her a "b***h." Jackson denied that the Defendant pulled out a knife and said that she pulled out "a little key chain" and began chasing him with it. Jackson said that he ran back inside his house and his shirt got caught on a nail which caused the cut on his arm. He said he told Officer McLeod at the hospital that the Defendant cut him with a knife, because "I was upset; I was mad." He then testified that he told the officer the Defendant cut him with a knife because he thought that was what had happened.

Jackson gave the following testimony in explaining the bleach found on his clothing:

Well, she wasn't tryin' to throw bleach on me in my face. She was throwin'

3

bleach on the clothes she bought for me. You know, she bought me some clothes and went to Players. And she like, "You ain't gonna get my clothes and take off with them either." And she throw bleach on the clothes. It wasn't on my face or nothin'. It was just like on my shoes and stuff like at the bottom 'cause - - she could have throwed it in my face but she didn't.

Jackson testified that he did not know who the Defendant called that day and that he did not hear any of the conversation. He later learned that the Defendant called her son's ex-girlfriend and not her son. The Defendant told her son's ex-girlfriend about the argument, and it was the son's ex-girlfriend who then contacted the Defendant's son and told him he should go to the victim's house. Jackson confirmed that it was one of the Defendant's sons that shot him, and he defended the shooting saying, "I would come to my mother's rescue if somebody tell me somebody spit on my mother."

At the conclusion of this hearing, the trial court found that the Defendant had violated her probation for assaulting Jackson with a knife and ordered her to serve sixty days in custody with the remainder of her sentence to be served on probation. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant contends the trial court erred when it revoked her probation and ordered her to serve sixty days in custody. The Defendant argues that there was insufficient evidence of her conduct at the hearing to support a revocation of her probation on the subsequent arrest. The State responds that the trial court properly revoked the Defendant's probation and ordered her to serve sixty days of her sentence in confinement. We agree with the State.

When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. T.C.A. § 40-35-311(e) (2009). Upon finding that the defendant has violated the conditions of probation, the trial court may revoke the probation and either: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for up to two additional years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); *see* T.C.A. §§ 40-35-308, -310, -311 (2009). The defendant has the right to appeal the revocation of his probation and entry of his original sentence. T.C.A. § 40-35-311(e)(2). After finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." T.C.A. § 40-35-311(e)(1); *accord Hunter*, 1 S.W.3d at 646 (holding that the trial court retains the

4

discretionary authority to order the defendant to serve his or her original sentence in confinement). Furthermore, when probation is revoked, "the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension . . . ." T.C.A. § 40-35-310 (a) (2009).

The decision to revoke probation is in the sound discretion of the trial judge. *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). This Court will uphold a trial court's judgment to revoke probation unless the trial court abused its discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

When the violation alleged in a probation warrant is the commission of a new offense, the State must present sufficient facts to enable the trial court to make a proper judgment as to whether the conduct in question violated the law. *Harkins*, 811 S.W.2d at 83 n.3. While pending charges can be the basis for a revocation of probation, a trial court may not rely upon the arrest or the indictment alone to revoke the probation. *See State v. Adams*, 650 S.W.2d 382, 383 (Tenn. Crim. App. 1983). A police officer's testimony about the facts surrounding an arrest may be sufficient to support a trial court's revocation of probation. *State v. Eric L. Abell*, No. M2006-01981-CCA-R3-CD, 2007 WL 2088949, at *5 (Tenn. Crim. App., at Nashville, July 23, 2007) *no Tenn. R. App. P. 11 application filed*.

In the present case, the trial court made the following findings when it revoked the Defendant's probation:

> There is no question in my mind that there was a verbal altercation between [the victim] and [the Defendant]. That . . . [the Defendant] chased [the victim] around with something. I don't believe it's a bottle opener. I think it was some form of a knife. It may have been on a key chain, but it was a knife. It wasn't a bottle opener. And I believe she cut him with that. I believe he spit on her, which is a very disgusting thing for anybody to do. And I do believe she [] threw bleach on him.
>
>      . . . .
>
> So what . . . I'm left [with] is clearly – clearly [the Defendant] is engaged in conduct that she should not have been engaged with. I believe she cut [the victim].

5

. . . .

So I'm going to find you're in violation of your probation for what I believe to be an assault on [the victim] with a knife, and I'm going to order you to serve sixty days in custody.

In this case, the record supports the trial court's finding that the Defendant violated the terms of her probation. Officer McLeod testified that he interviewed Jackson at the hospital after the altercation, and Jackson informed Officer McLeod that the Defendant chased him through the yard with a black-handled folding knife. Officer McLeod observed a cut on Jackson's upper right arm consistent with his story that the Defendant cut him with a knife. Although, Jackson later recanted some of his prior statements to the officer, Jackson agreed that the Defendant was chasing him during the course of an argument. Thus the evidence supports the trial court's finding that the Defendant assaulted the victim with a knife. The record therefore establishes that the Defendant failed to comply with the terms of her probation. Based on the foregoing, we conclude that the record contains "substantial evidence" that the Defendant violated the terms of her probation. *See Harkins*, 811 S.W.2d at 82.

The Defendant complains that there was not sufficient evidence to revoke her probation with respect to her vandalism charge; however, upon review of the record, the trial court based the revocation on the aggravated assault charge and not the vandalism charge. As we have already concluded, the trial court had sufficient evidence to find that the Defendant, based upon the aggravated assault charge, violated the conditions of her probation. As such, we conclude that the trial court's revocation of the Defendant's probation was not an abuse of discretion. The Defendant is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we conclude the trial court properly revoked the Defendant's probation. As such, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

6