IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 22, 2005 Session

## STATE OF TENNESSEE v. DERWOOD S. KENDRICK - Filed July 5, 2005

**Appeal from the Criminal Court for Hamilton County**
**No. 233221, 233332, 234197, 244199, & 237828   Buddy Perry, Judge**

_____

**No. E2004-02260-CCA-R3-CD**

_____

The defendant, Derwood Scott Kendrick, was on probation for several convictions of attempted misapplication of contract funds and one (1) conviction of illegal voting. While on probation, the defendant was arrested for theft, misapplication of contract funds and passing worthless checks. The trial court held a probation revocation hearing. At the conclusion of the hearing, the trial court revoked the defendant's probation. The defendant appealed this revocation on the grounds that: (1) the trial court erred in refusing to divest the media privilege for a news reporter and (2) there was insufficient evidence for the trial court to revoke his probation. We have analyzed the issues and find that the trial court did not err in refusing to divest the media privilege. However, we also find that the evidence does not support the revocation of the defendant's probation. We affirm in part and reverse in part the decision of the trial court, and remand for further proceedings in accordance with this opinion.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed in Part and Reversed in Part.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Daniel J. Ripper, Chattanooga, Tennessee, for the Appellant, Derwood S. Kendrick.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; Bill Cox, District Attorney General; Rodney C. Strong, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The defendant pled guilty to multiple counts of attempted misapplication of contract funds and one (1) count of illegal voting on August 1, 2002. The trial court sentenced the defendant to two (2) years for the illegal voting conviction and eleven (11) months and twenty-nine (29) days for each attempted misapplication of contract funds conviction. These sentences were to run consecutively to each other and consecutively to a previous ten (10) year sentence for theft by conversion of contract funds in Georgia. These sentences were all suspended and the defendant was placed on supervised probation for a period of five (5) years and 361 days.

Following the guilty plea, and while on probation, the defendant entered into other construction contracts. In June or July of 2003, Kenny Wilhoite entered into a contract with the defendant for the defendant to build a full garage with an upstairs for $22,000. The contract provided that Mr. Wilhoite would pay the defendant four (4) payments of $5,500 each at different points during the construction. The first payment was due at the signing of the contract, the second was due upon completion of the foundation, driveway apron, and floor of the garage, the third installment was due upon completion of the framing and the fourth was due upon completion of the job. Mr. Wilhoite paid the defendant the initial $5,500 and an additional payment of $7,500. However, the defendant did not complete the portion of the job required for the second payment. The defendant poured the concrete pad, put up two (2) walls of the foundation block and threw some lumber in the yard. The defendant never finished the driveway apron or any other work.

Daniel Bender was a subcontractor for the defendant during the job for Mr. Wilhoite. He worked on Mr. Wilhoite's garage for a week. He had also worked for the defendant on other occasions. The defendant did not pay Mr. Bender for all of the work he performed on various jobs. Mr. Bender is unable to ascertain whether he was paid in full for the work he performed at Mr. Wilhoite's house because payment for his work for the defendant was not broken down by the job.

Lucy Wright also entered a contract with the defendant on November 17, 2003. The contract was for the defendant to remodel her bathroom for $7,950. Ms. Wright paid the defendant half of the total price at the beginning of the transaction. The agreement was for the defendant to begin the project by December 1, but preferably before Thanksgiving. The defendant did not start the project by December 1. He did arrive to work on the bathroom on December 6. The defendant ripped everything out of the bathroom and left a hole in the bathroom floor through which cold air was entering the house. The defendant left the materials from Ms. Wright's bathroom in a pile in her driveway and in the cul-de-sac of her street. On the Wednesday following the defendant's demolition of her bathroom, she saw on the news that the defendant had been arrested.

A probation violation warrant was issued against the defendant on December 10, 2003. The probation violation report stated that the defendant had been arrested on new charges of theft, felonious misapplication of contract funds, and passing worthless checks. The trial court held a

hearing on September 7, 2004.  As a result of this hearing, the trial court revoked the defendant's probation.  The defendant filed a timely notice of appeal.

## ANALYSIS

The defendant argues two (2) issues on appeal: (1) whether the trial court erred in refusing to divest the media privilege asserted by Calvin Sneed in response to the Defendant's subpoena; and (2) whether the trial court erred by revoking the defendant's probation when there was insufficient evidence for the court to do so.

### Media Privilege

Calvin Sneed, a reporter with News Channel 9 in Chattanooga, investigated a dispute between the defendant, operating as Paxton Builders, and Ms. Teresa LeCroy.  Apparently, Ms. LeCroy hired the defendant to complete some flood repair work.  This report aired on Mr. Sneed's show "ConsumerWatch."  Mr. Sneed indicated in his news report that Ms. LeCroy received a partial refund as a result of the news investigation.  The defendant issued a subpoena for Mr. Sneed prior to his probation revocation hearing.  This subpoena requested Mr. Sneed to bring "[a]ny and all materials which includes but is not limited to your journalistic investigation regarding the segment that News Channel 9 aired involving Teresa LeCroy and Paxton Builders."  Mr. Sneed asserted the media privilege, and the defendant subsequently moved to divest the privilege.   The defendant argued that Mr. Sneed's media privilege should be divested because the reporter actually mediated a resolution of the dispute between Ms. LeCroy and the defendant.  The defendant also maintained that there was no alternative means of obtaining the information that Mr. Sneed discovered.  The trial court refused to divest Mr. Sneed of his media privilege.

The media privilege is found at Tennessee Code Annotated section 24-1-208.  It states:

> A person engaged in gathering information for publication or broadcast connected with or employed by the news media or press, or who is independently engaged in gathering information for publication or broadcast, shall not be required by court, a grand jury, the general assembly, or any administrative body, to disclose before the general assembly or any Tennessee court, grand jury, agency, department, or commission any information or the source of any information procured for publication or broadcast.

Tenn. Code Ann. § 24-1-208(a).  Our supreme court interpreted this statute to protect both confidential and non-confidential information collected for publication or broadcast.  Austin v. Memphis Pub. Co., 655 S.W.2d 146, 149-50 (Tenn. 1983).  For an individual to successfully divest

the media privilege the trial court must find that the individual has shown three (3) factors by clear and convincing evidence:

(A) There is probable cause to believe that the person from whom the information is sought has information which is clearly relevant to a specific probable violation of law;
(B) The person has demonstrated that the information sought cannot reasonably be obtained by alternative means; and
(C) The person has demonstrated a compelling and overriding public interest of the people of the state of Tennessee in the information.

Tenn. Code Ann. § 24-1-208(c)(2)(A)-(C).

At the beginning of the probation revocation hearing, this issue was argued in the trial court. After hearing arguments from both sides, the trial court stated, "I'm going to find that, in my judgment, the mediation process was a part of the gathering process and that there's, there is no exception there, and I'm going to find that 2 and – (2)(A) and (2)(B) are not, not complied with and, therefore, I should leave the, the immunity intact."

The defendant argues that the information he seeks from Mr. Sneed is not within the information protected by Tennessee Code Annotated section 24-1-208. He argues that Mr. Sneed involved himself as a go-between in the dispute between the defendant and Ms. LeCroy and therefore, was not procuring information for broadcast. The defendant also states that when Mr. Sneed began to mediate the dispute, he became an active player in the dispute such that he was directly affecting the outcome of the situation.

The defendant does not cite to any caselaw to support his position that Mr. Sneed's involvement in a resolution of a contract dispute negates the media privilege. However, it appears from our supreme court's interpretation of the statute that the privilege applies to a wide category of information. The statute states that a trial court cannot require a person employed by the news media to disclose "any information or the source of any information procured for publication or broadcast." Tenn. Code Ann. § 24-1-208(a). When interpreting this statute, our supreme court stated, "[t]he non-specific adjective 'any' means 'all.'" Therefore, so long as Mr. Sneed was collecting the information pertaining to the defendant's and Ms. LeCroy's dispute for broadcast on his report, we conclude that the information is protected by the media privilege, whether Sneed helped negotiate a settlement or not. The transcript of Mr. Sneed's report clearly references a settlement between the defendant and Ms. LeCroy. Therefore, this information is subject to protection by the media privilege.

In addition, we agree with the trial court that the defendant has not proven the criteria set out in the statute to divest the media privilege. First, the defendant's probation revocation hearing

involved his dealings with Mr. Wilhoite, Mr. Bender and Ms. Wright. The defendant's dispute with Ms. LeCroy was never brought up at the hearing as evidence to revoke the defendant's probation. Therefore, the defendant has not proven that Mr. Sneed's knowledge of the dispute between the defendant and Ms. LeCroy was relevant at the probation revocation proceeding. Second, the defendant has not proven that Mr. Sneed is the only source of the information as required by Tennessee Code Annotated section 24-10-208(c)(2)(B). The defendant could have easily called the defendant or Ms. LeCroy to testify about the information gathered by Mr. Sneed. Third, the defendant has not established that there is a compelling and overriding public interest in the information.

Because we agree with the trial court that the defendant has not proven the three (3) requirements set out in Tennessee Code Annotated section 24-1-208(c)(2) to divest the media privilege, we affirm the judgment of the trial court on this issue.

## Probation Revocation

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310 & -311. The decision to revoke probation rests within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a de novo standard. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). In other words, in order for this Court to find that the trial court abused its discretion, the record must contain no substantial evidence to support the trial court's conclusion that a probation violation occurred and that, as a result of that violation, probation should be revoked. Id.; see also State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997).

We conclude that there was insufficient evidence to show that the defendant violated a condition of his probation. The defendant was charged with theft, misapplication of contract funds and passing worthless checks. At the conclusion of the probation hearing the trial court stated, "I think that the proof does establish a pattern of conduct sufficient for me to conclude that he's been engaging in a series of thefts, and I'm going to revoke his probation . . . ." We disagree with the trial court's conclusion.

The State was required to prove by a preponderance of the evidence that the defendant violated a condition of his probation. One condition of his probation was that the defendant not disobey the law. The defendant was charged with theft of property, felonious misapplication of contract funds and passing worthless checks. The State has not proven by a preponderance of the evidence that the defendant received money from Mr. Wilhoite, but did not perform the work to earn that money. The defendant did actually perform a portion of the work he asked the defendant to perform. The second payment for a increase in costs was not an objectionable amount, nor is it unheard of in a construction situation for previously unexpected costs to arise.

The State proved that the defendant did not pay Mr. Bender for all the work that he performed as a subcontractor. However, we are unable conclude that the testimony at the hearing by the witnesses proves by a preponderance of the evidence that the defendant misapplied contract funds while on probation. Because Mr. Bender was unable to testify for which jobs the defendant failed to pay him, we are unable to conclude when the jobs were completed for which Mr. Bender was not paid.

More importantly, the State has not proven the elements required under Tennessee Code Annotated section 66-11-138 which makes misapplication of contract funds a crime. The statute reads:

> Any contractor, subcontractor, or other person who, with intent to defraud, uses the proceeds of any payment made to that person on account of improving certain real property for any other purpose than to pay for labor performed on, or materials furnished by that person's order for, this specific improvement, while any amount for which such person may be or become liable for such labor or materials remains unpaid, commits a Class E felony.

Tenn. Code Ann. § 66-11-138(a). The State did not prove in its case how the defendant used any misapplied funds, if there were any. Because there is no proof that the defendant used the funds inappropriately, we cannot conclude that he has used those funds for other than the work he performed at for his contractual obligations. Moreover, there is not evidence in the record to establish the crime of theft.

While it appears that the defendant may not be the most desirable person with whom to conduct business, we find that the evidence presented in this record does not preponderate in favor of a finding that the defendant violated any criminal laws.

Because the preponderance of the evidence does not support a finding that the defendant disobeyed the law, we reverse the trial court's revocation of the defendant's probation.

### CONCLUSION

For the reasons stated above, we affirm in part and reverse in part and remand for further proceedings in accordance with this opinion.

_____
JERRY L. SMITH, JUDGE

-6-