# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE Assigned on Briefs May 19, 2010

### STATE OF TENNESSEE v. DANIEL PATRICK BLANKENSHIP

**Direct Appeal from the Criminal Court for Davidson County Nos. 2006-C-2608, 2006-C-2614 Cheryl A. Blackburn, Judge**

---

**No. M2009-01913-CCA-R3-CD - Filed July 14, 2010**

---

The Defendant, Daniel Patrick Blankenship, pled guilty to aggravated burglary, theft over $10,000, and theft over $1,000. The trial court sentenced him to an effective sentence of six years to be served on probation. Soon thereafter, a violation of probation affidavit was filed against the Defendant. After a hearing, the trial court revoked the Defendant's probation and ordered him to serve his sentence in confinement. The Defendant appeals, contending the trial court erred in placing his original sentence into effect. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Willow Fort (at trial), Nashville, Tennessee, and James O. Martin, III (on appeal), Nashville, Tennessee, for the Appellant, Daniel Patrick Blankenship.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Lacy Elaine Wilber, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

In November 2006, the Defendant pled guilty to theft over $10,000, aggravated burglary, and theft over $1,000. At the time he committed these offenses, he was on parole for a prior conviction. The trial court sentenced the Defendant to an effective sentence of six years, to be served consecutively to his previous parole sentence. In March 2007, the trial court amended the judgments, allowing for the Defendant to be returned to the local workhouse at the expiration of his previous

1

parole sentence to serve his six-year sentence in this case. In August 2008, the trial court granted the Defendant's motion to serve his six-year sentence on probation and placed this probationary sentence into effect.

In June 2009, the Defendant's probation officer filed a probation violation affidavit, averring the Defendant failed to maintain employment and failed to report to his probation officer. In July 2009, his probation officer amended the affidavit to aver the Defendant had also violated his probation by being arrested for vehicle theft and by failing to report this arrest to his probation officer.

The trial court held a revocation hearing, wherein the Defendant conceded he had violated his probation by: failing to report, being arrested for theft in July 2009, and failing to report this arrest to his probation officer.

The Defendant testified he had been diagnosed with "manic depressive disorder 2," and he had struggled with drug addiction for ten years, being hospitalized twice. When he began serving his probation sentence in this case, he was taking two medications to treat his mental illness. At that time, he began working for Public Safely Incorporated and began making the court-ordered restitution payments that were part of his probation terms. He soon, however, stopped taking his medication and began abusing drugs. During this relapse, he took an acquaintance's vehicle without permission. He returned the vehicle to its owner a week later, but by this time the owner had already filed a report against the Defendant for the theft of the vehicle.

The Defendant recalled that, at some point during his relapse, the Defendant contacted his probation officer, who had attempted to reach him through a third party, and informed her he had relapsed. She requested he meet her later the same day, but he lacked transportation and could not meet her. Knowing he soon would have to return to jail, he checked himself into a men's rehabilitation program at Rescue Mission, in order to have a "stable environment." He said he "was just getting crazy out there" and that he was trying to stop using drugs and knew he "needed to get [his] head clear." In July 2009, while he was still at the Rescue Mission, he was arrested for his conduct with respect to his acquaintance's vehicle. After his arrest, he registered for the New Avenues program, an in-jail rehabilitation program.

None of the Defendant's family was present at his revocation hearing, a fact that he attributed to the "hurt and disappointment" he had caused them. He said he was, however, in contact with his family, and church members regularly visited him in jail.

The Defendant said he wanted to enter a long-term rehabilitation program rather than return to jail. He testified that it was not "the desire of his heart" to continue using drugs and said he did not want "to be using drugs the rest of [his] life." He said, "You know, I would like for at sometime to get clean and stay clean, to go back out in society and live and enjoy being with my family instead of being alienated from them because of my addiction." The Defendant testified he knew the director of Recovery Community, a half-way house, and that she had interviewed him, was aware of his

2

multiple relapses, and had admitted him to her program.

On cross-examination, the Defendant acknowledged he was on parole for previous convictions when he committed the crimes in this case. These previous crimes included three felony convictions. The Defendant also acknowledged that the theft of property over $10,000 conviction was based upon his theft of a pick-up truck that belonged to Belmont Church in Nashville.

The Defendant testified that he briefly relapsed in October 2008 and reported his drug use to his probation officer during their next meeting. When his probation officer tested him for drugs, he did not test positive, so the officer simply recommended that he enter drug treatment. He did not use drugs for the next five months but relapsed again in March 2009, stopped reporting to his probation officer, and eventually was arrested for theft of a vehicle.

As to the vehicle theft the Defendant committed while on probation in this case, he explained he had been using drugs with the vehicle's owner, and the owner asked him to take his vehicle to get more "dope." The Defendant did so but did not return until a week later. When he returned, the owner told him he had reported that the Defendant had stolen his vehicle. According to the Defendant, however, the owner said he would drop the charge against the Defendant. The Defendant explained he believed this was possible, so he did not report the theft charge to his probation officer. He eventually pled guilty to the unauthorized use of a motor vehicle.

Upon examination by the trial court, the Defendant acknowledged that he was living at a half-way house called Men of Valor when he relapsed in March 2009. The court reminded him that it had allowed him to serve his sentence in this case on probation in the Men of Valor facility because he and his sponsor from the Men of Valor program had testified at a previous hearing to determine his eligibility for a suspended sentence. The Defendant testified that the Men of Valor program ejected him after he was arrested in July 2009. The trial court recalled that the testimony at the previous hearing was very similar to the Defendant's testimony at the revocation hearing in that at each hearing the Defendant said he had hit "rock bottom" and was seriously pursuing recovery.

Based upon this evidence, the trial court found that the Defendant violated his probation and placed his original sentences in effect, to be served consecutively to the six-month sentence he received for unauthorized use of a vehicle.

## II. Analysis

On appeal, the Defendant concedes he violated his probation but contends the trial court erred when it revoked his probation and ordered him to serve his original sentence. He argues the trial court should have credited his testimony that he was eager to rehabilitate himself and ordered him to complete the New Avenues program and serve his sentence in the Recovery Community half-way house. The State responds that the trial court acted within its discretion to revoke the Defendant's probation and that its order finding that the Defendant's previous failures

to comply with terms of alternative release sentences justified the trial court's reinstatement of his original sentence of incarceration.

When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. T.C.A. 40-35-311(e) (2006). Upon finding that the defendant has violated the conditions of probation, the trial court may revoke probation and either: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for up to two additional years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); *see* T.C.A. 40-35-308, -310, 311 (2006). The defendant has the right to appeal the revocation of his probation and entry of his original sentence. T.C.A. § 40-35-311(e). After finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." *Id*.; *accord Hunter*, 1 S.W.3d at 646 (holding that the trial court retains the discretionary authority to order the defendant to serve his or her original sentence in confinement). Furthermore, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension . . . ." T.C.A. § 40-35-310 (2006).

The decision to revoke probation is in the sound discretion of the trial judge. *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). This Court will uphold a trial court's judgment to revoke probation unless the trial court abused its discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

In this case, the trial court revoked the Defendant's probation and reinstated his original sentence of six years in confinement. The Defendant concedes that the record supports the trial court's finding that he violated his probation. Indeed, the Defendant discontinued his employment, began using drugs, was arrested for using a vehicle without authorization, and failed to report his arrest to his probation officer. As such, substantial evidence supports the trial court's conclusion that the Defendant violated his probation. *See Harkins*, 811 S.W.2d at 82.

The Defendant does object, however, to the trial court's refusal to allow him to serve the remainder of his sentence in a half-way house and the reinstatement of his original incarcerative sentence. At the conclusion of the revocation hearing, the trial court noted that the Defendant violated his probation despite having previously presented evidence of his willingness to recover from his drug addiction:

> I remember [the Defendant] because of all the issues about that plea and whether or not he wanted to—how he ended up at the Department of Correction[]. And he got back because he wanted to get into some programs. And he participated in the

4

Jericho program, and it says he participated—the letter I had said he participated in Bringing up Boys, Every Man's Battle, What Wives Wish Their Men Knew About Women, Growing in Christ, Song of Solomon, Wild at Heart, Every Man's Battle, Healing the Masculine Soul, Anger Management, Healing the Heart. He was participating in an addiction curriculum called Celebrate Recovery. He graduated from a Jobs [f]or Life course. I mean, he did all these things. He had a mentor, Mr. Welch, who wrote a nice letter for him. He had a place to live, Men of Valor apartments. They were going to have after care with him. They were going to do this. I mean, when he left court and he went to that Men of Valor program, there was an after care program, there was programming for Bible studies, addiction recovery programs that would be held at the evening house of where he was staying. He had a mentor. And he doesn't even make it out of there. They had to ask him to leave. I think it says volumes that they're not even in court today or anybody else because, I mean, he has disappointed them to no end, I'm sure.

So sentence is going to be into effect. It's two cases, 2006-C-2614 and 2006-C2608. They're running concurrent with each other, but they're now going to be consecutive to his General Sessions sentence.

[Addressing the Defendant], don't apply for a suspended sentence on these cases. I mean, I think you just need to finish serving them.

Thus, the trial court based its reinstatement of the Defendant's original sentence on the similar nature of the Defendant's statements to statements he made previously, which induced the court to grant him a suspended sentence in the first place, which the Defendant ultimately violated.

We conclude the trial court did not abuse its discretion when it ordered the Defendant to serve his original six-year sentence. The Defendant admitted that, while on probation in this case, he began using drugs again, abandoned his employment, used a vehicle without authorization, and failed to report an arrest to his probation officer. The Defendant's quick relapse into drug abuse despite living in a half-way house suggests that another sentence involving release to a half-way house would not succeed. As such, the trial court did not abuse its discretion when it reinstated the Defendant's original sentence. *Harkins*, 811 S.W.2d at 82. The Defendant is not entitled to relief.

## III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

5