# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 10, 2012

## STATE OF TENNESSEE v. TRAVIS VAUGHN

### Direct Appeal from the Circuit Court for Dyer County
### No. 09CR179      Lee Moore, Judge

### No. W2011-01707-CCA-R3-CD  - Filed August 27, 2012

The defendant, Travis Vaughn, appeals the decision of the Dyer County Circuit Court revoking his probationary sentence.  The defendant pled guilty in the Dyer County Circuit Court to three counts of non-support of a minor child and received three consecutive sentences of eleven months and twenty-nine days, all suspended to probation but for thirty days.  Thereafter, a violation report was filed charging the defendant with multiple violations of the terms and conditions of his probation.  Following a hearing, the trial court revoked the defendant's probation and ordered him to serve the remainder of his sentence in incarceration.  On appeal, the defendant contends: (1) that the trial court lacked jurisdiction to revoke his probation as the case was not properly commenced; and (2) that the determination to revoke was error as it conflicts with public policy.  Following review of the record, we find no error and affirm the revocation of probation.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

James E. Lanier, District Public Defender, and Howell Tod Taylor, Assistant Public Defender, for the appellant, Travis Vaughn.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Karen W. Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Procedural History

On April 13, 2010, the defendant pled guilty, in two separate cases, to three counts of non-support of a minor child. As part of the agreement, he was sentenced to three terms of eleven months and twenty-nine days. The sentences were ordered to be served consecutively and, further, to be suspended following the service of thirty days in jail. As part of the terms of probation, the defendant was ordered to pay $77 per month toward his child support as restitution.

On October 22, 2010, a probation violation report was issued noting several infractions of the terms of the defendant's probationary agreement. The report, however, was not file-stamped until November 2. On October 26, 2010, the trial court issued a violation warrant, which was executed on November 22, 2010. The warrant is contained in the instant record, although it bears no file-stamp mark. In December 2010, a follow-up violation report was issued. Although not contained in the record before us, there is some indication that a third report was filed in April.

A probation violation hearing was held before the trial court on May 17, 2011. The first witness called was Justin Tubbs with the Board of Probation and Parole. He supervised the defendant and issued the violation reports in this case. In the first report, Mr. Tubbs noted that: (1) the defendant was arrested for crack cocaine possession on September 29, 2010; (2) the defendant failed to report that arrest to him; (3) on August 18, 2010, the defendant tested positive for marijuana use; and (4) the defendant had not paid restitution and costs as ordered by the court.

Mr. Tubbs indicated that he filed a follow-up violation report in December 2010, which alleged that: (1) the defendant pled guilty to the possession charge and was sentenced to a suspended sentence of eleven months and twenty-nine days; and (2) the defendant also pled guilty to driving on a revoked license, third offense, and violating the terms of his community corrections sentence in another jurisdiction. Mr. Tubbs further indicated that in April, 2011, he issued a third report because the defendant had failed to report from November 2010 until April of 2011.

The defendant also testified at the hearing. He testified that he had now obtained employment and had made an attempt to ensure that his wages would be garnished in order to pay his child support debt. With regard to his possession charge and conviction, the defendant admitted the validity of his conviction. He testified that he did not report the arrest to his probation officer because he had given the arresting officer his probation card and was

present when that officer called Mr. Tubbs. The defendant further acknowledged his guilty pleas to driving on a revoked license and violation of community corrections. With regard to his failure to pay restitution and costs as ordered by the court, the defendant produced records indicating that he had made three payments towards his balance, although all occurred after the violation proceedings had been initiated. On March 8, he made two payments totaling $575. On April 1, he made a payment of $77, which was the payment amount ordered by the court. However, the defendant indicated that he had not made a payment in May because his hours had been reduced at his job. Finally, the defendant did not dispute that he had failed to report to his probation officer after he was shown the initial violation report in November. He indicated that he had returned to meet with Mr. Tubbs in April at the suggestion of his attorney in the instant case.

After hearing the evidence presented, the trial court revoked the defendant's probation and ordered that he serve the balance of his sentence in incarceration. Thereafter, the defendant filed timely notice of appeal with this court.

**Analysis**

On appeal, the defendant raises a two-part argument with regard to the revocation of his probation. First, he contends that the trial court lacked jurisdiction to revoke his probation "because the warrant that commenced the probation revocation proceeding was never filed and as such was never properly issued," resulting in the case not being "commenced properly by law." Further, he contends that the trial court "did not exercise conscientious and intelligent judgment in revoking defendant's probation in full" because the decision is in conflict with public policy.

**I. Jurisdiction**

The defendant challenges the trial court's jurisdiction in this case. He asserts that the cause was not properly commenced, thus depriving the court of jurisdiction to revoke the probationary sentence. We are unable to find any previous case which made this specific argument in Tennessee. The law cited by both the defendant and the State comes from cases in which the defendant contended that the court lacked jurisdiction to revoke probation because the sentence had already expired. We, nonetheless, find it illustrative in the instant case.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2010), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to

be put into effect. While normally revocation or extension of a defendant's probation may only occur within the probationary period, our supreme court has held that "[t]he running of a defendant's probationary period may, however, be interrupted by the issuance of a revocation warrant." *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001). The court in *Shaffer* continued:

> If the probation revocation warrant issued, within the term of the sentence, *the issuance of the warrant commences the revocation proceedings* and thereby interrupts the running of the probationary period "until such time as the trial court [may] hear and determine the issue raised by the [warrant]." *McGuire v. State*, 200 Tenn. 315, 292 S.W.2d 190, 193 (Tenn. 1956). The interruption of the probationary period is triggered by the issuance of the probation revocation warrant and not by service of the warrant on the defendant. *Allen v. State*, 505 S.W.2d 715, 717 (Tenn. 1974).

*Id*. (emphasis added).

There is no dispute in this case that violation warrant does not contain a typical file-stamp by the clerk. Nor is it disputed that the warrant does bear a case number, a recitation of the alleged probation violations, a date on which the defendant was to appear in court, and a signature by the trial judge on October 26, 2010. Further, it is clear from the record that the warrant was executed on November 22, 2010, when the defendant was taken into custody. Additionally, it is stamped as page "000010" as part of the appellate record, which has been certified by Clerk of the Circuit Court for Dyer Court. The question before us now is whether this is sufficient to establish "issuance" of the warrant.

We agree that some opinions written by this court have generally equated "issuance" with "filing." *See State v. Anthony*, 109 S.W.3d 377, 381 (Tenn. Crim. App. 2001); *Shanna Dean Alder*, No. E2002-00287-CCA-R3-PC (Tenn. Crim. App., at Knoxville, Aug. 28, 2002). In the normal course of a probation revocation proceeding, that would be true. The warrant would be completed by the court and then file-stamped. However, in this case, the stamp was never affixed to the document. Nonetheless, on this record, we conclude that the warrant was in fact "issued" and, in all likelihood, was "filed." "Issue" has been defined as "to put into circulation; to send out . . . ." Steven H. Gifis, *Law Dictionary*, 110 (1975). Clearly, the warrant in this case was "put into circulation," as it was executed. Moreover, we fail to see how it was possible that the warrant worked its way through the system, absent an actual filing. It was sent to the Clerk's office, made its way to an officer, was executed, returned, and made its way into the court record. Through some clerical error, the copy before us was not file-stamped. That error does not preclude a finding that it was issued by the trial court. "A warrant of arrest is an order, in writing, stating the substance of the

complaint, directed to a proper officer, signed by a magistrate, and commending the arrest of the defendant." T.C.A. § 40-6-201. Such a document was issued in this case, thereby properly commencing prosecution and granting the trial court jurisdiction.

## II. Revocation of Probation

The defendant next contends that the trial court "did not exercise conscientious and intelligent judgment in revoking defendant's probation in full." A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the defendant has violated a condition of his or her probation. T.C.A. §§ 40-35-310, -311(e). Probation revocation rests within the sound discretion of the trial court. *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). To establish an abuse of discretion, the defendant must show that there is no substantial evidence in the record to support the trial court's determination regarding the probation violation. *Id*. Proof of a violation does not need to be established beyond a reasonable doubt. *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984). Rather, if the trial court finds by a preponderance of the evidence that a violation has occurred, the court may revoke the probation and suspension of the sentence. T.C.A. § 40-35-311(e). In a probation revocation hearing, the credibility of witnesses is to be determined by the trial court. *Mitchell*, 810 S.W.2d at 735.

Once the trial court has determined a violation of probation has occurred, it retains discretionary authority to order the defendant to: (1) serve his sentence in incarceration; (2) serve the probationary term, beginning anew; or (3) serve a probationary period that is extended for up to an additional two years. *State v. Hunter*, 1 S.W.3d 643, 647 (Tenn. 1999); *see also* T.C.A. § 40-35-310(b). The determination of the proper consequence of the probation violation embodies a separate exercise of discretion. *Hunter*, 1 S.W.3d at 647.

The argument put forth by the defendant is based strictly upon public policy. By his own admission, the defendant established that he did in fact violate the terms of his probation by possessing crack cocaine, driving on a revoked license, testing positive for marijuana, and failing to pay restitution. That is not in dispute, thereby establishing on appeal that there was substantial evidence in the record to support the trial court's determination that violations occurred. Rather, the defendant contends that the court erred because the determination went against the public policy of the State to see that children are supported by their parents. He argues that the decision to revoke rather than "trying an alternative via additional conditions to . . . probation . . . was a mistake in judgment." He contends that "public policy should have dictated some form of alternative probationary measures instead of a full revocation."

While we agree that public policy does encourage parents to support their children, we know of no authority, and the defendant points to none, which carves out an exception to probation revocation for people convicted of the crime of non-support of a minor child. That is essentially what the defendant is asking us to do. What his argument fails to take into account, however, is that he has already been given the chance to succeed on probation by supporting his children and has failed to do so. The trial court stated:

> [Y]ou made a point the point being that it is better that he be out and working and [pay] child support, I agree. He's got money to buy marijuana, he's got money to buy crack cocaine, but he doesn't have enough money to keep his child support up. I'm just really very unsympathetic with his plight when he was offered help back last August and he refused it and now he is asking for help.

We agree with the trial court. While the best solution would be for this type of offender to remain on probation and support his minor children, it oftentimes does not occur. To allow continual violations without revocation would make a mockery of the judicial system, as well as allowing preferential treatment for those who have violated the law in a certain manner. That is not a proper resolution, despite the public policy to support children.

The record before us is replete with evidence of the violations, including admissions by the defendant. Once a violation has been established by a preponderance of the evidence, the court is then authorized to revoke the probation and order a sentence of incarceration. On this record, we conclude that the defendant has failed to establish that the decision to revoke his probation was an abuse of discretion. He is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the revocation of probation and resulting sentence of incarceration is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE