IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 8, 2012

**STATE OF TENNESSEE v. JACQUE MICHELLE LEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2010-C-2500, 2010-C-2525     Seth Norman, Judge**

**No. M2011-01669-CCA-R3-CD - Filed November 15, 2012**

The defendant, Jacque Michelle Lee, appeals the sentencing determination made by the Davidson County Criminal Court following the revocation of her alternative sentence. The defendant was sentenced to an effective ten-year sentence after she pled guilty to five counts of theft of property and one count of theft of services, and she was ordered to serve her sentence on community corrections. The defendant also agreed to participate in a drug court program. Within days of starting to serve her sentence, the defendant failed to attend two required program meetings. A violation warrant was issued. Following a hearing, the defendant's alternative sentence was revoked, and the trial court ordered the defendant to serve the remainder of her sentence in confinement. On appeal, the defendant does not contest the trial court's finding of a violation. Rather, she argues that the trial court erred by ordering her to serve her sentence in confinement rather than returning her to community corrections. After review, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennent, Assistant Public Defender (on appeal); and Assistant Public Defender Kevin Kelly (at hearing), for the appellant, Jacque Michelle Lee

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Renee Erb, Assistant District Attorney General (at hearing); and Shannon Poindexter, Assistant District Attorney General (at plea), for the appellee, State of Tennessee.

**OPINION**

## Procedural History and Factual Background

The relevant facts underlying the defendant's convictions, as recited by the State at the guilty plea hearing, are as follows:

> Had [the case] gone to trial, the State would produce evidence to show that between September 1, 2009, and November 20, 2009, [the defendant] took money or property from seven separate victims with the intent to deprive those victims of the property or money. In essence, a total of approximately $13,000 was taken between the various victims.
>
> The scheme was that [the defendant] would lease a condominium located in Nashville, Davidson County, placing an ad for it on Craig's List. When a victim would contact her about the condominium, she would meet with them, show the victim the condo, and accept money, either check, money order, et cetera, and advise that she would check the victim's credit ratings, et cetera.
>
> She would send text messages from her phone to the victims giving excuses why she would not be able to meet with them and would never return phone calls or messages, and she would never provide access to the condominiums [that] she had allegedly leased to those victims.
>
> . . . .
>
> In [the theft of services case], the State would produce evidence that on September 25, 2009, [the defendant] paid for veterinarian services for Murray Road Animal Hospital by writing a check in the amount of $458.83, and that check was drawn on a closed account. When contacted, [the defendant] refused to honor the check and make good on that.

Based upon these actions, the defendant pled guilty, on April 1, 2011, in two separate cases, to five counts of theft of property and one count of theft of services. The agreement specified that the defendant would receive an effective ten-year sentence, as a Range II offender, which would be served in the community corrections program. At the hearing, the defendant requested that she be allowed to participate in the Drug Court program. After receiving stern admonitions concerning the program rules, she was permitted to participate in the program.

On April 12, only eleven days after the defendant was placed on community

corrections, a violation warrant was issued alleging that the defendant had failed to report to her community corrections officer and a group counseling session on April 11 and had missed two required drug screenings on April 7 and April 11. The defendant was taken into custody as a result and remained there until a violation hearing was held on July 6, 2011.

At the hearing, at which she was the only witness, the defendant expressly acknowledged that she had failed to report and to take her drug screenings as ordered. The defendant attempted to excuse her failure to comply by stating that on the days in question her "thinking was just off." The defendant explained that she had previously become addicted to pain pills and claimed that her addiction had created a "domino effect" in her life. The addiction led to an inability to pay her bills, which in turn led her to take money from others. She further explained that she did not go to her first screening on April 7 because she was in pain, although she did not seek medical attention because she was afraid they would give her pain medications, and she would be tempted to use them. The defendant stated that she did not think she would be violated for missing one time, especially because she had been sick. She further testified that she was also in pain on April 11 but again sought no medical assistance. The defendant did go to the hospital following her incarceration on the violation warrant, where it was determined that she was suffering from pleural effusion. On cross-examination, the defendant denied that she missed her appointments because of an article that was released on April 6, which included an interview with a woman alleging that the defendant had committed another similar scheme involving other individuals.

The defendant testified that, since being incarcerated, she has completed the Healing Journey Program, a drug program, and has attended Alcoholics Anonymous meetings on numerous occasions. She asserted that this was the first time she had ever received help with her addiction. She requested that she be allowed to return to the drug court program or to a halfway house where she could get treatment.

The defendant did acknowledge that she had a number of prior convictions involving lying and stealing which occurred prior to her alleged addiction to drugs. She also acknowledged lying in the past to make herself look better, even falsely claiming that she had a master's degree to the probation officer preparing the pre-sentence report.

After hearing the evidence, the trial court found that the defendant had violated the terms and conditions of her community corrections agreement. The court then revoked the defendant's alternative sentence and ordered that the balance remaining of the original sentence be served in the Department of Correction. The defendant has timely appealed.

**Analysis**

On appeal, the defendant contends that the trial court erred by ordering her to serve the remainder of her sentence in confinement following revocation. A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the defendant has violated a condition of his or her probation. T.C.A. §§ 40-35-310, -311(e) (2010). Probation revocation rests within the sound discretion of the trial court. *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). To establish an abuse of discretion, the defendant must show that there is no substantial evidence in the record to support the trial court's determination regarding the probation violation. *Id.* Proof of a violation does not need to be established beyond a reasonable doubt. *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984). Rather, if the trial court finds by a preponderance of the evidence that a violation has occurred, the court may revoke the probation and suspension of the sentence. T.C.A. § 40-35-311(e). In a probation revocation hearing, the credibility of witnesses is to be determined by the trial court. *Mitchell*, 810 S.W.2d at 735.

Once the trial court has determined a violation of probation has occurred, it retains the discretionary authority to order the defendant to: (1) serve his or her sentence in incarceration; (2) serve the probationary term, beginning anew; or (3) serve a probationary period that is extended for up to an additional two years. *State v. Hunter*, 1 S.W.3d 643, 647 (Tenn. 1999); *see also* T.C.A. § 40-35-310(b). The determination of the proper consequence of the probation violation embodies a separate exercise of discretion. *Hunter*, 1 S.W.3d at 647.

The defendant acknowledges that abuse of discretion is the proper standard of review, but she nonetheless espouses two arguments as to why the trial court erred in ordering her sentence to be served in incarceration. First, she contends that the trial court improperly based its decision upon the fact that the defendant had prior felony convictions on her record. The defendant bases her claim on the following statements made by the court:

> Well I have got an individual that appears to be 39 years of age, and during that time, she has managed to accumulate ten felony convictions for a total of 23 years is what she has done. The violation warrant is sustained, and the sentence is placed into effect.

The defendant contends that the trial court should not have based its decision to revoke on convictions that she already had when she was initially sentenced to community corrections. The defendant has cited case law in support of her argument, and we agree that the law states that revocation and re-sentencing decisions should not be solely based on prior criminal acts that were known at the time the suspended sentence was imposed. *See State v. Stubblefield*,

953 S.W.2d 223, 224 (Tenn. Crim. App. 1997).

However, we do not find that law to be relevant in the case before us. Our reading of the comments does not support the argument that the trial court's quoted language indicates that the court was basing its decision solely on prior criminal acts which were known at the time of her original sentencing. The statements at issue were made immediately after the assistant district attorney general brought the fact that the defendant has a warrant pending in another county to the trial court's attention and asked the trial judge if the court wished "to wait and see what they do with that." The quoted language concerning the defendant's prior criminal history appears to have been made solely for the purpose of indicating that the trial court did not feel it was necessary to wait before disposing of the defendant's case. The court merely referenced the defendant's record before specifically stating that the "violation warrant is sustained." That comment plainly implies that the court found that the violations alleged in the warrant were proven. Considering the record as a whole, we conclude that it was the defendant's actions in this case, not her prior criminal history, on which the revocation was based.

Next, the defendant contends that "as an addict admitted to the drug court treatment program, her self-reported inability to immediately meet the demands of the program should not justify placing her entire sentence into effect." Her argument relies in large part on comments made by this court in *State v. Brent R. Stewart*, No. W20009-00980-CCA-R3-CD (Tenn. Crim. App., at Jackson, Aug. 10, 2010), in which this court recognized that, within the therapeutic model of a drug court, some degree of noncompliance by those in the program is expected. This court further observed that federal guidelines stress that drug courts should adopt a "therapeutic, collaborative and measured response to a participant's noncompliant behavior," such as admonishment from the bench, increased monitoring, confinement in the courtroom or jury box, and escalating periods of jail confinement. *Id*. Basically, the defendant's argument is that because her violations were foreseeable consequences of her addiction, they do not justify placing her entire sentence into effect. We disagree.

It was not our intent in *Stewart* to attempt to dictate how drug courts were managed on a daily basis or to instruct judges in the drug court program on how to address if revocation was appropriate. *Stewart* did not alter the standard of review applicable to a judge's decision to revoke an alternative sentence. The applicable standard of review was and remains an abuse of discretion. If a violation is substantiated on the record, the trial court is free to revoke the alternative sentence. To hold otherwise would not be in compliance with our sentencing principles and guidelines.

We note that the issue in *Stewart* was very distinct from the one put forth by the

defendant in this case. The issue before the court in *Stewart* was whether the judge who participated with the defendant in the program could also be the judge who decided if revocation was appropriate after a violation was alleged. *Id.* Our comments made there served only as reminder of the principles underlying drug court programs. Under the facts of that case, we felt compelled to issue the reminder that "the drug court program explicitly recognizes that alcohol and drug addiction 'is a chronic , relapsing, condition,' that 'many participants [will] exhibit a pattern of positive urine tests,' and expressly contemplates that many participants will experience periods of relapse '[e]ven after a period of sustained abstinence.'" *Id.* The defendant in this case stands in a far different position than the defendant in *Stewart*, who participated in the program for an extended period of time. The defendant in this case never began participation in the program.

The defendant in this case is unable to establish an abuse of discretion occurred in the decision to revoke and order confinement. The defendant herself admitted that she had violated the terms and conditions of her sentence by failing to report for multiple drug screenings and required meetings. While the defendant offered excuses for her failure to comply, the discretion remained with the trial court on whether additional leniency should be granted. The trial court was free to conclude that offering the defendant any further leniency was futile. The defendant, after being granted considerable largess from the trial court, failed to comply with the terms and conditions of her agreement mere days after being placed in the program. Moreover, her assertion that she did not believe she would be violated for one infraction indicates an indifferent attitude toward the privilege she was afforded.

After finding that a violation had occurred, the trial court was statutorily authorized to revoke the sentence and order the balance of the original sentence to be served in confinement. No abuse of discretion is apparent on this record.

## CONCLUSION

Based upon the foregoing, the judgment of the Davidson County Criminal Court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-6-