IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 4, 2020

**STATE OF TENNESSEE v. KENNETH LAMAR BUGG**

**Appeal from the Circuit Court for Giles County**
**No. CR-14608      Stella L. Hargrove, Judge**

———————————————

**No. M2019-01908-CCA-R3-CD**

———————————————

Defendant, Kenneth Lamar Bugg, appeals the order of the Giles County Circuit Court revoking his probation and ordering him to serve his sentence in confinement. Defendant argues that the trial court erred by considering evidence of "non-adjudicated charges" that were pending against him, as a basis to revoke his probation. He further contends that the trial court's decision to fully revoke his probation was "too great a punishment for a first violation of probation." Following a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Mattea L. Rollin, Elkton, Tennessee, for the appellant, Kenneth Lamar Bugg.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Jessie Chandler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**<u>Factual and Procedural Background</u>**

On April 8, 2019, Defendant pled guilty, as a Range I standard offender, to sale of .5 grams or more of methamphetamine, a Schedule II controlled substance. Pursuant to a

plea agreement, Defendant received a sentence of ten years, which was suspended to supervised probation following the service of six months in jail.[1]

On July 8, 2019, the trial court issued a violation of probation warrant based on allegations that: Defendant failed to report as scheduled; Defendant tested positive for amphetamine, methamphetamine, and marijuana; Defendant failed to attend in-patient drug treatment; and his whereabouts were unknown. On July 23, 2019, an amended violation of probation warrant was issued, alleging that Defendant was charged with evading arrest, possession of marijuana, possession of methamphetamine, and possession of drug paraphernalia on July 18, 2019. A second amended violation of probation warrant was issued on August 27, 2019, asserting that Defendant was additionally charged with assault on July 24, 2019, while in custody at the Giles County Jail. On September 10, 2019, a third amended violation of probation warrant was issued alleging that Defendant was charged with introduction of contraband into a penal institution on August 27, 2019.

The trial court subsequently held a probation revocation hearing. Lee McKissack, with the Tennessee Department of Correction, testified that he was assigned to supervise Defendant's probation after Defendant was placed on probation on April 8, 2019. Officer McKissack explained that Defendant had not complied with the terms of his probationary sentence. He testified that Defendant failed to report as instructed on May 28, 2019, June 5, 2019, and June 18, 2019. Officer McKissack said that he attempted to conduct a home visit at Defendant's last reported address on North Third Street in Pulaski on June 13, 2019. There was no response at the door, but Officer McKissack left a note asking Defendant to call him immediately. Officer McKissack stated that he also made multiple attempts to reach Defendant by phone without success.

Officer McKissack said that Defendant failed his first drug test, which was administered at his intake report date on May 8, 2019. Officer McKissack explained that Defendant field-tested positive for amphetamine, methamphetamine, and marijuana and that the lab later confirmed that Defendant's sample contained all three substances.[2] Officer McKissack testified that, after the failed drug screen, he referred Defendant to a forensic social worker, who recommended that Defendant attend in-patient treatment. However, Defendant never followed through with checking into treatment. Officer McKissack stated that Defendant was also arrested for the following offenses while on probation: evading arrest, possession of marijuana, possession of methamphetamine, possession of drug paraphernalia, assault, and introduction of contraband into a penal institution.

---

[1] Defendant received pretrial jail credit from December 22, 2018, to April 8, 2019.

[2] The State introduced, without objection, a copy of the lab report.

On cross-examination, Officer McKissack recalled that the first address Defendant provided the probation office was his parents' address but that Defendant's parents advised he was not staying there. When Officer McKissack called Defendant, Defendant explained that he was staying with his girlfriend on Third Street. Officer McKissack said that he conducted a home visit at that location on May 22, 2019. He testified that, after Defendant failed to report on May 28 and June 5 and could not be reached by phone, he attempted another home visit on June 13 but was unsuccessful in locating Defendant.

Officer Cory Medley of the Pulaski Police Department testified that, on July 18, 2019, he observed Defendant in the passenger side of a vehicle. Officer Medley was aware of an outstanding violation of probation warrant for Defendant's arrest, and he decided to conduct a traffic stop. Officer Medley recalled that, as soon as he activated his blue lights, Defendant exited the vehicle ran down Pine Street. Officer Medley chased Defendant on foot and eventually caught up to him behind a house on Pine Street. Officer Medley explained:

> [Defendant] continued to run. I advised him that I was going to tase him if he kept running. He started reaching into his waistband and at that time I deployed the taser.
>
> . . . .
>
> After I deployed the taser and placed [Defendant] in custody, we searched the area and located a bag of marijuana.

Officer Medley stated that he also found on Defendant a glass pipe used to smoke methamphetamine. Additionally, when he returned to the police department and began photographing and weighing the marijuana, Officer Medley found a small amount of methamphetamine in the bag of marijuana.

Zachary Fye testified that he worked as a corrections officer at the Giles County Jail. Officer Fye explained that he was helping Defendant take a shower at the jail on July 24, 2019, after Defendant had surgery on both of his wrists. Defendant requested a new uniform and underwear, and Officer Fye entered Defendant's cell to look for the items. Officer Fye testified that, when he returned to the shower with two different sized shirts and asked Defendant his size, Defendant became "irate" and began repeatedly saying, "[F]**k you, mother f***er[.]" When Officer Fye instructed Defendant to "back up," Defendant responded, "[F]**k you, you racist mother f****er" and spat in the officer's face. Officer Fye testified that he believed Defendant would hurt him. He explained, "I put my right hand on his chest to back him off of me. He kept coming at me. I then placed my hand on his chest to move him to the back of the wall to restrain

him from trying to hurt me." He said that two other officers then entered the showers and ended the altercation.

Corporal Burnie Zirkles, a corrections officer with the Giles County Sheriff's Department, testified that on August 27, 2019, he was in segregation "pulling another inmate for transport," when Defendant asked Corporal Zirkles if he could put a cell phone in with Defendant's personal property. Corporal Zirkles reported Defendant's request to his sergeant, and she told him to retrieve the phone from Defendant and bring it to her. Corporal Zirkles testified that inmates are not allowed to have cell phones inside the jail and that they are considered contraband.

Sergeant Yumeca Inman of the Giles County Sheriff's Department testified that she was working in the jail on August 27, 2019, when Corporal Zirkles told her about Defendant's cell phone. Sergeant Inman stated that, after Corporal Zirkles recovered the phone from Defendant, Corporal Zirkles brought Defendant to see her. She asked Defendant how he obtained the cell phone. She testified, "And at first he wouldn't tell me and I kind of persisted." Defendant eventually told Sergeant Inman that he got the cell phone when he was at the courthouse earlier that day and that he brought the phone back into the jail by hiding it inside one of the braces on his wrists. Defendant said that he used the cell phone to call his family and friends and asked Corporal Zirkles to put it in his property after running out of minutes.

At the conclusion of the hearing, the trial court found that the State had carried its burden and established "each and every ground" in the probation violation warrant issued July 8, 2019. The trial court continued:

> And then insofar as [] amendment one, we have heard from the officer. The Court, in hearing about a new arrest, a judge has to hear enough evidence in order to make an intelligent decision as to that ground. And so the Court has, on amendment one, the Court finds the State has carried its burden of proof as to that offense date of 7/18/19. And we know that is the same day that the outstanding probation warrant was served as well as the new charges.
>
> Insofar as amendment two, the . . . Court has heard enough to make an intelligent decision and finds the State has carried its burden of proof as to that ground.
>
> As to amendment three, with the offense date being 8/27/19, the Court finds it has heard enough to make an intelligent decision to find that the State has carried its burden of proof on that ground.

- 4 -

After finding that Defendant had violated his probation, the trial court revoked his probation and ordered him to serve his ten-year sentence. This timely appeal of the trial court's order follows.

## Analysis

Upon a finding by a preponderance of the evidence that a defendant has violated a condition of his or her probation, a trial court may revoke probation and "commence the execution of the judgment as originally entered[.]" Tenn. Code Ann. § 40-35-311(e)(1)(A) (2020); *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). We will not disturb the trial court's ruling on appeal absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001) (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, a defendant must show that there is "no substantial evidence" in the record to support the trial court's determination that a violation of probation has occurred. *Id.*

Here, the trial court did not abuse its discretion in determining that Defendant violated multiple conditions of his probation. Officer McKissack testified that Defendant failed to report on numerous dates and that he failed a drug screen by testing positive for the use of amphetamine, methamphetamine, and marijuana. Officer Medley testified that, on July 18, 2019, he attempted to arrest Defendant on an outstanding warrant but that Defendant evaded arrest by running from him on foot. Officer Medley said that, when he caught up with Defendant and arrested him, he found a bag of marijuana and methamphetamine near Defendant and drug paraphernalia on Defendant's person. Officer Fye testified that he was assaulted by Defendant at the jail on July 24, 2019. Officer Fye explained that, while at the showers, Defendant became irate, cursed at him, and spat at him, thereby placing him in fear. Finally, Corporal Zirkles testified that he discovered Defendant in possession of jail contraband in the form of a cell phone on August 27, 2019, and Sergeant Inman testified that Defendant admitted to smuggling the phone into the jail inside the braces on his wrist.

In his brief, Defendant argues that the trial court should not have considered evidence of the "non-adjudicated charges" that were pending against him. Although a trial court may not rely upon the mere fact of an arrest, a revocation of probation can be based on criminal conduct that is the subject of pending charges. *State v. Andrew B. Edwards*, No. W1999-01095-CCA-R3-CD, 2000 WL 705309, at *3 (Tenn. Crim. App. May 26, 2000) (citing *State v. David Henry Proffitt*, No. 03C01-9901-CR-00026, 1999 WL 817663, at *2 (Tenn. Crim. App. Oct. 11, 1999)), *perm. app. dismissed* (Tenn. Sept. 11, 2000). In such situations, the State "must produce evidence in the usual form of testimony" to establish by a preponderance of the evidence that the defendant violated the

law. *State v. Catherin Vaughn*, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App. June 14, 2010) (citing *State v. Michael Harlan Byrd*, No. 01C01-9609-CC-00411, 1998 WL 216859, at *7 (Tenn. Crim. App. May 1, 1998)); *State v. Walter Lee Ellison, Jr.*, No. 01C01-9708-CR-00361, 1998 WL 272955, at *2 (Tenn. Crim. App. May 29, 1998). Here, the State called numerous witnesses at the revocation hearing and established by a preponderance of the evidence that Defendant violated the law multiple times while on probation, and the trial court properly considered this evidence in determining that Defendant violated his probation. *See Catherin Vaughn*, 2010 WL 243200 8, at *3.

Upon finding a violation, the trial court is vested with the statutory authority to revoke probation and suspension of the sentence and "[c]ause the defendant to commence the execution of the judgment as originally entered[.]" Tenn. Code Ann. § 40-35-311(e)(1)(A) (2020). The trial court did not abuse its discretion.

## **Conclusion**

The judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE