IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 5, 2013

**STATE OF TENNESSEE v. THOMAS RAY WARD**

**Direct Appeal from the Circuit Court for Dyer County**
**No. C98-339      Lee Moore, Judge**

**No. W2012-02054-CCA-R3-CD  -  Filed March 1, 2013**

The defendant, Thomas Ray Ward, appeals the Dyer County Circuit Court's revocation of his probationary sentence. Pursuant to a negotiated plea agreement, the defendant pled guilty to three counts of burglary of a motor vehicle, Class E felonies, and was given consecutive two-year sentences for each offense. However, the defendant was placed on probation for a period of eight years. A violation warrant was subsequently issued, and, at the hearing, the defendant acknowledged that he had committed the technical violations of his agreement. The trial court found the defendant to be in violation of the terms and conditions of his probation and ordered that the balance of the reinstated six-year sentence be served in incarceration. On appeal, the defendant contends that the decision to revoke was error because it was based upon the fact that the defendant had prior violations of his probation rather than on the technical violations which were established at the hearing. Following review of the record, we affirm the revocation of probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

H. Tod Taylor, Assistant Public Defender, for the appellant, Thomas Ray Ward.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; C. Phillip Bivins, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## Procedural History and Factual Background

On December 4, 1998, the defendant pled guilty to three counts of burglary of a motor vehicle and received consecutive two-year sentences for each charge. He was placed on supervised probation for eight years and was ordered to pay restitution of $9,866.41 at a rate of $100.00 per month.

On October 4, 2011, the instant violation report was filed in this case alleging that the defendant had: (1) failed to report to his probation officer; (2) failed to pay court costs; (3) failed to attend an administrative case review committee meeting; (4) failed to respond to Board of Probation and Parole letters and telephone calls; and (5) failed to provide verification of employment. The report, which was admitted into evidence, also contained notations about prior probation violation reports issued in the case and their eventual dispositions. In the "History of Supervision," it states that:

> On 8/26/99, a violation report was submitted due to [defendant] failing to pay court costs/restitution. The [defendant] caught upon his payments. On 11/23/99, the violation was dismissed.
>
> On 5/3/01, the [defendant] was arrested for Assault. He was sentenced to 11 months and 29 days, suspended to 5 days in Dyersburg Municipal Court. On 7/6/01, a violation report was submitted. The district attorney's office did not approve the violation report.
>
> On 8/9/04, an Administrative Case Review Committee was conducted to address the [defendant's] noncompliance with his rules of probation. His violations were:
>
> Failure to provide employment verification
> Failure to report for the months of May, June, and July 2004
> Failure to provide proof of court costs/restitution payments,
> He was given the following recommendations:
> Report twice per month
> Provide employment verification each month
> Provide the number of hours you work to your officer
> Call a temporary service twice per week
> Instructed to leave multiple phone numbers so that the

temporary services can contact him.

Pay $100 per month on restitution plus an addition $20 towards your arrearage.

On 3/15/05, a violation report was submitted. The [defendant's] violations were:

Failure to maintain employment or provide employment verification

Failure to comply with BOPP home check policy on 12/17/04

Failure to report to BOPP for the months of May, June, November, December 2005, and January 2005

Failure to pay court costs/restitution

On 5/17/05, the [defendant] appeared in Dyer County Circuit Court in reference to his violations. He agreed he violated his rules of probation. His probation was extended for a period of ten years to expire on 12/4/16. He was ordered to pay $100 per month in court costs/restitution.

On 8/25/06, a violation report was filed. The [defendant's] violations were:

Failure to provide employment verification or proof of seeking employment in January, February, March, May, and June 2006

Failure to report to BOPP for the months of January, February, March, May, and June 2006.

Failure to pay $100 per month court costs/restitution. He only paid $100 on 10/25/05, $50 on 5/26/06, and $100 on 7/14/06.

A follow-up violation report was filed on 5/12/08. The report stated the [defendant] had not reported to BOPP since 7/11/06. He failed to respond to home checks, letters, or phone calls. He was declared an absconder.

On 5/17/11, the [defendant] appeared in Dyer County Circuit Court. An agreement was made that the [defendant] would pay $500 in court costs/restitution that day. He was ordered to have the balance of the court costs and restitution ($6,398.41) paid within one year. The probation violation was dismissed. He was ordered to remain on supervision for the balance of his

original 10 year extension to end on 12/4/16.

The [defendant] reported to Officer Tubbs on 5/20/11. He was placed on maximum supervision. The [defendant] was advised he would be required to report twice per month. Officer Tubbs instructed the [defendant] to provide[] proof of a court cost/restitution payment each month to ensure his balance was paid in full by 5/17/12. He stated he understood.

A revocation hearing was held on the matter on June 12, 2012.

The first witness to testify was Justin Tubbs, the defendant's probation officer, who testified that this was the fourth violation warrant filed against the defendant in this case. Mr. Tubbs testified that he had no record of any restitution or court costs having been paid by the defendant since May 17, 2011, and that the remaining balance due was $6,398.41. He also testified that the defendant had failed to provide employment verification or to show proof of any job searches during this period. Moreover, Mr. Tubbs testified that the defendant failed to report for a mandatory meeting on July 20, 2011. He then left three voice messages during the month of August instructing that the defendant contact him to set up a time to meet. The defendant did not respond to the messages. Mr. Tubbs also sent two letters to the defendant during the month of August instructing him when to report. The defendant again failed to appear at any time during August 2011.

Mr. Tubbs indicated that on August 30, 2011, he mailed the defendant a letter instructing him that he had been scheduled for an Administrative Case Review Committee ("ACRC") meeting to discuss the technical violations of his probation and to attempt to get the defendant back in compliance with his agreement. The defendant did not report to the meeting.

On August 1, 2011, the defendant did call during non-working hours and left a voicemail for Mr. Tubbs. He testified that the message began with the defendant speaking into the phone and apologizing for not reporting, but he was soon interrupted by a female yelling at him regarding whom he was on the phone with. The call was disconnected. The defendant also did come to the probation office on September 16, 2011, and acknowledged that he had received the letter regarding the ACRC meeting. According to Mr. Tubbs, the defendant had no excuse for his failure to attend. Mr. Tubbs then reiterated that the defendant had failed to comply with the terms of his agreement by failing to meet with his probation officer twice a month, failing to pay restitution, and failing to provide proof of employment or job searches.

In his defense, the defendant called three family members to testify. Each indicated

that the defendant was having martial problems and that his wife had left him to raise his two young daughters alone. The defendant also testified and stated that he had paid $1850.00 in restitution since March 2012. Receipts were submitted by the defense which indicated that payments of $1800.00 and a $50.00 had been received, and the balance now owing was $4,548.41. The defendant testified that he had intended to pay the balance with his income tax refund, but his estranged wife had taken the money from his home after he withdrew it from the bank.

The defendant acknowledged that he did not attend the mandatory ACRC meeting in August 2011. He stated that he failed to attend because his wife had been called into work that day, and he had no transportation and was babysitting his sick children. The defendant indicated that he had attempted on multiple occasions throughout the day to call and let Mr. Tubbs know he could not attend, but claimed the phone number was always busy. He went on to testify that he had called the probation office in Union City and asked if they knew why he could not get through. According to the defendant, a worker there said she would email Mr. Tubbs that the defendant was trying to get in touch with him. The defendant claimed that when he told Mr. Tubbs "he had no excuse" for not attending, he was referring to his regular report dates, not the ACRC meeting.

After hearing the evidence presented, the trial court concluded that the defendant had violated the terms and conditions of his agreement and revoked his probation. The court further ordered that the defendant was to serve the balance of his original six-year sentence in the Department of Correction. The defendant has timely appealed the revocation.

**Analysis**

On appeal, the defendant asserts that the trial court erred in revoking his probationary sentence. A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the defendant has violated a condition of his probation. T.C.A. §§ 40-35-310, -311(e) (2010). Probation revocation rests within the sound discretion of the trial court. *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). To establish an abuse of discretion, the defendant must show that there is no substantial evidence in the record to support the trial court's determination regarding the probation violation. *Id*. Proof of a violation does not need to be established beyond a reasonable doubt. *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984). Rather, if the trial court finds by a preponderance of the evidence that a violation has occurred, the court may revoke the probation and suspension of the sentence. T.C.A. § 40-35-311(e). Upon finding that the defendant has violated the conditions of probation, the trial court is statutorily authorized to revoke the probation and either: (1) order incarceration; (2) order the

-5-

original probationary period to commend anew; or (3) extend the remaining probationary period for up to two additional years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); T.C.A. Sec. 40-35-308, -310, -311. At a probation revocation hearing, the credibility of witnesses is to be determined by the trial court. *Mitchell*, 810 S.W.2d at 735.

The defendant in this case does not contest the fact that the technical violations of the terms of his probation did in fact occur. Indeed, there seems to be no dispute that the technical violations of the probationary agreement occurred. Mr. Tubbs gave testimony to that effect, and the defendant himself acknowledged his failure to comply. The defendant's admission alone is an adequate basis for revocation of probation. *See State v. Johnny Leon Hatcher*, No. M2011-02028-CCA-R3-CD (Tenn. Crim. App., at Nashville, Oct. 29, 2012). Thus, it is clear that a preponderance of the evidence shows that the defendant violated the terms of his probation. Caselaw is clear that, upon such a finding, the trial court was vested with the statutory authority to revoke the probation and order the defendant to serve some or all of his original sentence in confinement. *See Hunter*, 1 S.W.3d at 644.

The defendant does not appear to dispute this reasoning. Rather, his argument is that the trial court abused its discretion in ordering revocation because the decision was based upon the defendant's history of previously adjudicated probation violations rather than the technical violations themselves. He contends that the "allegation of missed probation meetings and unpaid restitution, in and of themselves, do not justify incarceration but rather another opportunity at probation." His contentions are based on caselaw which states that "a probation revocation may not be imposed for previously adjudicated violations." *See State v. Beard*, 189 S.W.3d 730, 737 (Tenn. Crim. App. 2005).

In its findings on the record, the trial court did rely heavily upon the fact that the defendant had so many previous violations of probation in this case. The court stated, "if all we had to deal with was the fact that he missed a meeting and has not paid his restitution, then I would be -- I think another opportunity or another chance would be in line." However, the court went on to note previous violations and the numerous chances the defendant had already been afforded in this case to comply with the terms and conditions of probation. The record is abundantly clear that the defendant simply refused to comply with the condition of his probation for any length of time- the record is riddled with continual failures to comply with even the simplest conditions such as reporting to the officer or providing proof of employment. We must agree with the trial court that "the record is choked full of information that [the defendant] is simply not going to comply with the orders of probation."

We must initially point out that the defendant's reliance upon *State v. Beard* is misplaced. In that case, probation was revoked without evidence indicating that the

defendant had been guilty of any additional violations of the terms of his probation. *Id*. at 736. That is not the case before us currently. The record establishes several instances of new violations present here. It was from those that the trial court was statutorily authorized to revoke the defendant's probation. To say that the trial court is precluded from considering prior violations in determining the appropriate re-sentencing following revocation is simply erroneous. This court has noted on multiple occasions that an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing. *State v. David Harris, Jr.*, No. E2011-00880-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Dec. 5, 2011); *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504 (Tenn. Crim. App., at Nashville, Feb. 10, 1999). The defendant was granted chance after chance to comply in this case and remain on probation. He chose not to do so. After review, we find no abuse of discretion in the trial court's decision to revoke the defendant's probation and order service of the balance of the original sentence imposed. No relief is warranted.

## CONCLUSION

Based upon the foregoing, the revocation of probation by the Dyer County Circuit Court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE