IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Brief December 16, 2014

STATE OF TENNESSEE v. WILLIAM KENNETH LAWSON

Direct Appeal from the Circuit Court for Warren County
No. F13297    Larry B. Stanley, Jr., Judge

No. M2014-00612-CCA-R3-CD - Filed March 17, 2015

The defendant, William Kenneth Lawson, appeals the revocation of his probationary sentence. He pled guilty to possession of a controlled substance with intent to deliver and violation of his habitual traffic offender status. As a result, he was sentenced to an effective term of eight years on supervised probation. Subsequently, a violation warrant was issued alleging that the defendant had violated the terms and conditions of his probation agreement by being arrested on new charges. Following a hearing, the trial court ordered revocation of the probation and that the defendant serve the remainder of his sentence in incarceration. On appeal, the defendant contends that there is not sufficient evidence in the record to support the court's finding that a violation occurred. Following review of the record, we conclude that there was no abuse of discretion in the court's decision to revoke probation. As such, the judgment of the trial court is affirmed.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

L. Scott Grissom, Assistant Public Defender, McMinnville, Tennessee, for the appellant, William Kenneth Lawson.

Herbert H. Slatery, III,, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Lisa Zavogiannis, District Attorney General; and Thomas Minor, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

**Procedural History and Factual Background**

In March 2012, the defendant pled guilty to possession of a Schedule VI controlled substance with intent to deliver and to violation of his habitual traffic offender status, both Class E felonies. For each conviction, the defendant was sentenced, as a persistent offender, to a term of four years, which was to be served on supervised probation following service of 115 days in the county jail. The sentences were ordered to be served consecutively, resulting in an effective eight-year probationary sentence with service of 230 days.

In August 2013, the defendant was indicted by a Warren County grand jury for delivery of a Schedule II controlled substance, to wit morphine. As a result, a probation violation warrant was issued alleging that the defendant had violated the terms and conditions of his sentence by receiving additional criminal charges. A hearing was held on the matter in March 2014, at which multiple witnesses testified.

The first witness called was the defendant's probation officer, Sally Cantrell. She indicated this was the defendant's first violation in this case and that she had experienced no other problems with the defendant's compliance.

Three police officers testified as to the circumstances surrounding the two controlled drug buys which resulted in the charges against the defendant. First, Detective Tony Jenkins with the McMinnville Police Department testified regarding a drug buy which took place on May 14, 2013. Detective Jenkins was working with a confidential informant, Tommy Hodges, who had arranged to buy drugs from the defendant. Detective Jenkins and another officer met with Mr. Hodges at an arranged location, and Mr. Hodges' car and person were searched. He was then given $145 and equipped with a transmitting device that allowed the officers to monitor the transaction. Mr. Hodges then drove his vehicle to the Partridge Meadow apartments, and Detective Jenkins followed in his vehicle. He did not follow Mr. Hodges into the complex, as he was known in the neighborhood to work drug crimes and did not want to interfere with the transaction. However, he did hear the entire transaction through the transmitter. He was able to recognize Mr. Hodges' voice but not that of the defendant, as he was unfamiliar with the defendant. During the transaction, Officer Ben Cantrell stopped to speak with Detective Jenkins, and Detective Jenkins asked Officer Cantrell to drive through the apartment complex. Detective Jenkins informed him that Mr. Hodges was driving a Windstar minivan.

At the conclusion of the transaction, Mr. Hodges returned to the prearranged location, and Detective Jenkins followed. Mr. Hodges and his car were again searched. He gave Detective Jenkins two pills, later determined to be morphine, and returned $5. Mr. Hodges

was paid for his participation in the drug buy.

Officer Cantrell also testified and confirmed that he had encountered Detective Jenkins on that day and was asked to drive through the apartment complex. Officer Cantrell stated that while he was sitting with Detective Jenkins, he was able to hear the transaction through the transmitter. He recognized the voices of the defendant and Mr. Hodges, both of whom he was very familiar with.

According to Officer Cantrell, Detective Jenkins told him that Mr. Hodges was driving a black truck. He entered the apartment complex, where the defendant resided, and saw the defendant standing close to a black truck driven by Mr. Hodges. The defendant waved at Officer Cantrell and began to walk away from the truck. Officer Cantrell continued through the parking lot and left the complex.

Next, Investigator Jody Cavanaugh with the Warren County Sheriff's Department testified regarding another drug buy which took place on May 9, 2013. He stated that he was assisted in the matter by Detective Jenkins and Officer Carpenter. Just as in the other controlled buy, the officers met with Mr. Hodges and searched both his person and vehicle, a black truck, immediately prior to the transaction. Mr. Hodges' brother, who was present during the transaction, was also searched. Mr. Hodges was given $150 and was fitted with a transmitter. Investigator Cavanaugh then followed Mr. Hodges to the Partridge Meadow Apartments. In addition to hearing the transaction through the transmitter, Investigator Cavanaugh was able to maintain a visual on Mr. Hodges. He observed the defendant, whom he personally knew, approaching Mr. Hodges. He saw the defendant get inside Mr. Hodges' vehicle, and they drove around the block and immediately returned. During this period, Mr. Hodges and the defendant were heard discussing the drug transaction through the transmitter.

At the conclusion of the transaction, Mr. Hodges met Investigator Cavanaugh. He and his vehicle were again searched. He was in possession of three pills, later determined to be morphine, and no cash.

After an agent with the Tennessee Bureau of Investigation testified that the pills submitted for testing were in fact morphine, Detective Jenkins was recalled to testify regarding the discrepancy in the type of vehicle Mr. Hodges was driving. He stated that the defendant did have a black truck, but he believed that during the May 14 transaction, the defendant was driving a minivan. However, he stated that was only his recollection, as there was no reference in his notes regarding the type of vehicle.

After hearing the evidence presented, the trial court concluded that there was ample evidence that the defendant had violated his probationary sentence by selling a controlled

substance, which was a failure to obey the law. As such, the court revoked the defendant's probation and ordered service of the balance of the original sentence. The defendant timely appeals the revocation.

## Analysis

On appeal, the sole issue raised by the defendant is whether the trial court abused its discretion in revoking his probation because there is insufficient evidence in the record to conclude that the defendant committed the two drug offenses and, thus, violated the terms of his probation. He contends that the violation was not established by a preponderance of the evidence because the proof "did not rise to the level to tip the scales of justice one way or another. While it is possible that the State's allegation are true, it is just as likely the allegations are not true and the morphine tablets were acquired from a source other than the [defendant]." To support his argument, the defendant relies upon the following: (1) that his probation officer testified that the defendant had no other problems during his supervision; (2) that Detective Jenkins did not see the defendant during the transaction and could not identify his voice; (3) the discrepancy as to the type of vehicle Mr. Hodges was driving; and (4) that Mr. Hodges was accompanied by his brother during one of the transactions.

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the defendant has violated a condition of his or her probation. T.C.A. §§ 40-35-310, -311 (2010); *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). On appeal, this court will not disturb the trial court's ruling absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001) (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, the defendant must show that there is no substantial evidence in the record to support the trial court's determination regarding the probation violation. *Id*. Proof of a violation does not need to be established beyond a reasonable doubt. *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984). Rather, if the trial court finds by a preponderance of the evidence that a violation has occurred, the court may revoke the probation and suspension of the sentence. T.C.A. § 40-35-311(e). In a probation revocation hearing, the credibility of witnesses is to be determined by the trial court. *Mitchell*, 810 S.W.2d at 735.

Once the court has determined a violation of probation has occurred, it retains the discretionary authority to order the defendant to: (1) serve his or her sentence in incarceration; (2) serve the probationary term, beginning anew; or (3) serve a probationary period that is extended for up to an additional two years. *State v. Hunter*, 1 S.W.3d 643, 647 (Tenn. 1999); *see also* T.C.A. §§ 40-35-308, -310, -311. The determination of the proper consequence of the probation violation embodies a separate exercise of discretion. *State v.*

*Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007).

In its oral ruling from the bench, the trial court found as follows:

> After listening to all the proof regarding whether or not [the defendant] violated the terms of his probation I think it's abundantly clear that he did. I have heard the argument made many times, . . . that an informant might take the money and make up a drug buy in order to get paid. I've yet to see that happen and I don't know why someone would do that for a hundred dollars, to work with the police department and the sheriff's department to make a drug buy, to fake one. I don't think that's what happened here. I'm certain that it wasn't. These gentlemen involved in these two transactions are very experienced in what they do and it was abundantly clear that [the defendant] provided controlled substances in exchange for money.

> [The defendant] has an extremely long criminal history and will be revoked for the balance of his sentence in Case Number 13297. He will obviously be given credit for any time he's already served on this case.

We are unable to find merit in the defendant's argument. While he is correct that the violation must be found by a preponderance of the evidence, he is incorrect in his assertion that the evidence here fails to rise to that level. Additionally, as pointed out by the State, to find that the trial court abused its discretion in concluding that a violation occurred, this court does not weigh the evidence to determine if one version is "just as likely .. . . to be true." Instead, a defendant challenging the revocation must establish that the record contains no substantial evidence to support the conclusion of the trial court that a violation occurred. *Harkins*, 811 S.W.2d at 82. The defendant cannot meet that burden on this record.

The record contains abundant proof supporting the court's conclusion that the defendant violated the terms and conditions of his probation by failing to obey the laws. Multiple officers testified to the facts surrounding the controlled drug buys. The confidential informant and his vehicle were searched before and after the transactions. The confidential informant was given money and returned with morphine pills. The officers testified that during the controlled buy, they witnessed the defendant with Mr. Hodges and heard the transactions being conducted through the transmitter.

The fact that the defendant had no other probation violations has no bearing whatsoever on a determination if he in fact committed the one charged. Likewise, that the confidential informant was accompanied by his brother on one of the buys is immaterial to whether the defendant did in fact sell the drugs. Like the confidential informant, his brother

was searched and did not possess any illegal substances. After their departure, the officer was constantly monitoring their activities through the transmitter, as well as maintaining visual contact.

Furthermore, the fact that Detective Jenkins did not maintain visual contact with Mr. Hodges during the transaction goes only to the weight of the evidence. He was still hearing the transaction through the transmitter. Additionally, Officer Cantrell did drive through the apartment complex and saw the defendant standing next to a truck occupied by the confidential informant. While Detective Jenkins may have been confused about the type of vehicle Mr. Hodges was driving, Officer Cantrell was familiar with Mr. Hodges and was able to personally recognize him.

The evidence before the trial court was more than ample to conclude that the defendant more likely than not committed two drug offenses. As such, the trial court was statutorily authorized to order the revocation of the defendant's probation and to order that he serve the remainder of his sentence in incarceration.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.


_____
JOHN EVERETT WILLIAMS, JUDGE