IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 9, 2016


**STATE OF TENNESSEE v. JAMES JORDAN LEGGETT**


**Appeal from the Criminal Court for Davidson County**
**No. 2013-I-499, 2012-D-3341     J. Randall Wyatt, Jr., Judge**

_____


**No. M2015-00869-CCA-R3-CD – Filed February 12, 2016**

_____


James Jordan Leggett appeals claiming that the trial court abused its discretion when it revoked his probation.  Discerning no error, we affirm the judgment of the trial court.


**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Criminal Court Affirmed**


ROBERT L. HOLLOWAY, JR. J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Manuel B. Russ, Nashville, Tennessee, for the appellant, James Jordan Leggett.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Glenn Funk, District Attorney General; and Blake Bratcher, Assistant District Attorney General, for the appellee, State of Tennessee.



**OPINION**


**Procedural History**


In case number 2012-D-3341, the Davidson County Grand jury indicted James Jordan Leggett, the Defendant, for burglary and theft of property valued at $1,000 or more but less than $10,000.  Additionally, the Defendant agreed to proceed in case number 2013-I-499 by way of criminal information as to one count of possession with

intent to sell or deliver not less than one-half ounce nor more than ten pounds of a schedule VI controlled substance.[1]

In June 2013, the Defendant pleaded guilty to burglary, theft of property valued at $1,000 or more but less than $10,000, and possession with intent to sell a schedule VI controlled substance.  On June 11, 2013, an Order of Deferral granting the Defendant judicial diversion was entered for each offense.  The probationary term was set at four years for the burglary and theft and a consecutive term of two years for the possession of marijuana, for a total effective six-year term on judicial diversion.

On September 13, 2013, a violation of probation warrant was issued alleging a violation of Rule 1 based on new charges of simple possession or casual exchange and unlawful use of drug paraphernalia and of contributing to the delinquency of a minor. The warrant also alleged a violation of Rule 2 based on the Defendant's failing to report the new charges to his probation officer.  On October 14, 2013, the Defendant conceded the violation, and amended judgments were entered, reflecting that the Defendant's probation was revoked to time served and that the Defendant's probation was reinstated. The amended judgments also note that the Defendant was to remain on judicial diversion.

On November 14, 2014, a second violation of probation warrant was issued alleging a violation of Rule 1 based on new charges of misdemeanor vandalism in Rutherford County; a violation of Rule 2 based on the Defendant's failing to report the arrest to his probation officer; and a violation of Rule 4 based on the Defendant's failure to find employment during the past six months.

On December 18, 2014, an amended violation of probation warrant was issued alleging a violation of Rule 1 based on a new charge of aggravated robbery with an offense date of December 17, 2014, and a violation of Rule 2 based on the Defendant's failure to report the arrest.

### Probation Violation Hearing

On January 22, 2015, the trial court conducted a probation violation hearing.  The testimony at the hearing dealt almost exclusively with the alleged violation of Rule 1 based on the December 17, 2014, aggravated robbery charge.

---

[1] The Defendant was also charged with possession of drug paraphernalia with an offense date of December 22, 2012, although the charging document is not in the record.  That charge was mentioned in the Petition to Enter Plea of Guilty and was apparently dismissed.

William Majano, the victim of the aggravated robbery, testified that a few weeks before the robbery his car broke down and a girl named "Jessica" stopped to see if he needed help. After they talked for a while, he gave her his phone number. A couple of days later, she called stating that she needed a ride to her sister's house in Madison. After he got off work, Mr. Majano drove her to Madison without incident. A few weeks later, Jessica sent him a text message stating that she needed a ride to her sister's house. Mr. Majano again drove Jessica to Madison without incident. Jessica sent a text message to him on December 14, 2014, asking him to pick her up at 825 Longhunter Court in Antioch. When he got near the address, Jessica was waiting outside so he parked his truck. He saw two men walk in front of his truck and then circle around to the rear. When Mr. Majano saw them approaching in his rear view mirror, he tried to get out of his truck. He said "a short guy, put a gun in my stomach and told me to give him everything I had and he took my phone[.]" Mr. Majano said Jessica and another man "started checking out my truck." Mr. Majano identified the Defendant as the man that "kept checking the truck" and said that the Defendant took "some stuff out of [his] truck." At some point, a vehicle drove by, and the two men ran. Mr. Majano testified that Jessica "stood there with some [of his] stuff in her hands" so he "grabbed her from behind" and she "threw everything on the floor." He said that while he was bending down picking up some of his stuff, the short guy fired two shots at him. Both shots missed. Jessica and the two males then fled, and Mr. Majano left because he was afraid they would come back. Someone apparently reported the incident, and the police stopped Mr. Majano a short distance from the scene of the robbery. Mr. Majano provided a description of the two men and the female to the police. Mr. Majano confirmed that he identified the Defendant in a photo line-up to police.

On cross-examination, Mr. Majano admitted that defense counsel had showed him a photograph before court and that Mr. Majano identified that person as one of the men involved in the robbery. However, when shown the photograph while testifying, Mr. Majano said he could not say for sure whether the person in the photograph was one of the men who robbed him because the facial hair was different and the hair of the person in the photograph was longer. Mr. Majano also stated that the person who robbed him wore a hat.

Detective Jeffery Jobe was assigned as the lead investigator for an officer-involved shooting related to a robbery at Longhunter Court on December 14, 2014. After visiting the scene, Detective Jobe went to the Criminal Justice Center to interview Mr. Majano. Mr. Majano had previously provided descriptions of the two males and a female named Jessica to the officers. He said Mr. Majano described one assailant as a "black male, about 25, 30 years of age, 6' 4" 180 pounds." He described the gunman as a "black male, same age range 25-30, 5' 3" 140 pounds."

Detective Jobe testified that the Defendant was 6'5" tall. He identified the individual in the photograph that had been shown to Mr. Majano by the Defendant's counsel as Ivan Johnson. He said Mr. Johnson was interviewed by detectives on December 14th. He stated Mr. Johnson is listed as 5'11" tall on a booking photograph. Detective Jobe prepared photographic line-ups and showed four line-ups to Mr. Majano on the morning of December 15th. Mr. Majano identified Xavier McDonald as the gunman and Jerica Taylor as the female that previously told him her name was Jessica. Detective Jobe said Mr. McDonald was shot and killed by police at 825 Longhunter Court on December 14th. Detective Jobe showed another photographic line-up to Mr. Majano on the morning of December 16th. Within a few seconds after looking at the photographs, Mr. Majano identified the Defendant as the person "that went through my truck."

On cross-examination, Detective Jobe acknowledged that descriptions of an assailant's weight, height, and age are often inaccurate to some extent. He acknowledged that Mr. McDonald was 16 years old when he was killed and that Mr. Majano had estimated his age to be 25 to 30. Detective Jobe said Jerica Taylor was picked out of the photographic line-up by Mr. Majano and identified as the person he knew as Jessica. He stated Ms. Taylor had been previously arrested for robbery "with the exact same MO, basically." He stated that when Ms. Taylor was interviewed, she never "gave the name of Mr. Leggett" as someone involved in the robbery. Detective Jobe stated that certain proceeds from the robbery were found inside the home at 825 Longhunter Court and that Mr. Johnson was present in the home following the robbery. Detective Jobe acknowledged that Ivan Johnson was the person who named the Defendant as a possible suspect and that Mr. Johnson had a criminal record for felony assaults and misdemeanor theft.

Following cross-examination, the trial court asked a series of questions to Detective Jobe. Detective Jobe explained that, after the officers were provided the 825 Longhunter Court address by Mr. Majano, they drove to the address to do a "knock-and-talk." He stated that the officers found "Ivan Johnson, Taylor Johnson, Jerica, Xavier, [] Jonna Blackburn and [] one other female" in the apartment. He said "that is when everything transpired with Xavier McDonald, because he barricaded himself in a back room."[2] The Defendant was not at the apartment.

The trial court issued a written order revoking the Defendant's probation. The trial court accredited the testimony of Mr. Majano and his in-court identification of the Defendant as one of the men who robbed him. The trial court found by a preponderance

---

[2] The record does not provide any other details concerning the events that led to the shooting of Mr. McDonald.

of the evidence that the Defendant was in violation of probation, noting that, should the Defendant receive a favorable result in the aggravated robbery case, the court would revisit the matter.

## Analysis

The Defendant contends that the trial court abused its discretion in revoking his probation. He argues that the only evidence that he violated his probation by committing a new offense came from Mr. Majano and that his testimony identifying the Defendant as one of the individuals who robbed him was not credible. The State responds that the trial court acted within its discretion when it accredited Mr. Majano's testimony and properly found that the Defendant's arrest for aggravated robbery provided a sufficient basis for the revocation of the Defendant's probation. We agree with the State.

Upon a finding by a preponderance of the evidence that a defendant has violated a condition of his or her probation, a trial court may revoke probation and order the imposition of the original sentence. Tenn. Code Ann. §§ 40-35-310, -311; State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). We will not disturb the trial court's ruling on appeal absent an abuse of discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, a defendant must show that there is "no substantial evidence" in the record to support a trial court's determination that a violation of probation has occurred. Id. Proof of a violation does not need to be established beyond a reasonable doubt. State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984). Rather, if a trial court finds by a preponderance of the evidence that a violation has occurred, the court may revoke the probation and suspension of the sentence. Tenn. Code Ann. § 40-35-311(e).

Upon finding a violation, the trial court is vested with the statutory authority to revoke the probation and suspension of sentence and "[c]ause the defendant to commence the execution of the judgment as originally entered." Tenn. Code Ann. § 40-35-311(e)(1)(A). Furthermore, when probation is revoked, the trial judge may order "the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension." Tenn. Code Ann. § 40-35-310(a). The trial court retains the discretionary authority to order the defendant to serve the original sentence. See State v. Duke, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995).

In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge, and the trial judge's findings have the weight of a jury verdict. State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). In this case, the trial court heard the proof and accredited Mr. Majano. It is not the province of this court

to second guess the trial judge's determination with regard to the credibility of witnesses. See State v. Eric Pernell Taylor, No. M2011-01996-CCA-R3-CD, 2013 WL 709299, at *3 (Tenn. Crim. App. Feb. 26, 2013), no appeal filed; State v. Robert Kenneth Dubose, No. W2011-01422-CCA-R3-CD, 2012 WL 1656922, at *3 (Tenn. Crim. App. May 9, 2012), perm. app. denied (Tenn. Aug. 15, 2012); State v. Stephanie Mayfield, No. W2008-02534-CCA-R3-CD, 2010 WL 322649, at *6 (Tenn. Crim. App. Jan. 26, 2010), no appeal filed. The Defendant has failed to show that there is "no substantial evidence" in the record to support the trial court's determination that a violation of probation has occurred. The Defendant has failed to show that the trial court abused its discretion.

## Conclusion

For the aforementioned reasons, we affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE