IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2024

**STATE OF TENNESSEE v. CECIL CEMONTAIE BURNICE**

**Appeal from the Circuit Court for Montgomery County**
**No. CC-16-CR-526      William R. Goodman, III, Judge**

————————————————————

**No. M2023-00793-CCA-R3-CD**

————————————————————

Cecil Cemontaie Burnice, Defendant, claims the trial court erred by revoking his probation based on new criminal charges of aggravated robbery and criminal trespass because Defendant was subsequently found not guilty by a jury of aggravated robbery and the State dismissed the criminal trespass count  We determine that the trial court did not abuse its discretion by revoking Defendant's probation based on the evidence presented at the revocation hearing.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JILL BARTEE AYERS, JJ., joined.

Jeffrey Watts (at hearing) and Gregory D. Smith (on appeal), Clarksville, Tennessee, for the appellant, Cecil Cemontaie Burnice.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Robert J. Nash, District Attorney General; and Michael T. Pugh, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 3, 2016, Defendant was indicted in Case No. 16-CR-526 for attempted aggravated robbery (Count 1), first degree murder (Count 2), and aggravated assault (Count 3).  On November 27, 2017, Defendant entered an open plea to the lesser included offense of voluntary manslaughter in Count 2 with the length and manner of service to be determined by the trial court.  On the same day, Defendant pled guilty to aggravated assault in Count 3 in exchange for a seven-year sentence to be served on probation.  Following a

sentencing hearing, Defendant was sentenced to eight years in the Tennessee Department of Correction in Count 2.[1]

On June 13, 2022, a warrant was issued based on a Probation Violation Report ("the Report") alleging that Defendant had violated the terms of his probation in Count 3 of Case No. 16-CR-526 and in Case No. 17-CR-886. Based on the information in the Report, Defendant was convicted of vandalism in Case No. 17-CR-886 and sentenced to eleven months and twenty-nine days to be served consecutively to the seven-year sentence in Count 3 of Case No. 16-CR-526. The Report alleged that Defendant had violated Rule 1 by being arrested for burglary of a vehicle and domestic assault, both offenses alleged to have occurred on May 20, 2022.[2] On October 31, 2022, an amended warrant was issued based on an Amended Probation Violation Report alleging that Defendant had violated the terms of his probation by being arrested for aggravated robbery, criminal trespass, domestic assault, and burglary, all alleged to have been committed on September 1, 2022.

On November 21, 2022, the trial court held a probation revocation hearing. Jessie Williams, the victim of a September 1, 2022 aggravated robbery, testified that he went to the Circle K located on Lafayette Road in Clarksville to purchase some sweets because his blood sugar was low and he did not have any insulin. He bought a container of orange juice and an apple pie. After exiting the store, he began walking home on Rider Avenue. He was confronted by Defendant and a second man later identified as Semontarious Brown. Defendant asked Mr. Williams for a cigarette, and after Mr. Williams gave him one, Defendant knocked Mr. Williams "down to the ground" and said "give me all your money . . . I seen you go inside the store and get some money out of the teller." Mr. Williams told Defendant, "[T]he machine didn't give me any money." After searching Mr. Williams' pockets and finding no money, Defendant said, "I ought to just kill you right now." Mr. Brown took the bag containing the orange juice and apple pie, and both men walked away. The victim called 9-1-1. When the police responded, Mr. Williams explained what had

---

[1] The record on appeal does not include the judgments, a transcript of the plea submission hearing or a transcript of the sentencing hearing in Case No. 16-CR-526. We glean from the sparse record that the eight-year sentence in Count 2 was aligned consecutively to the seven-year sentence in Count 3, and because Count 2 was not included in the probation violation warrant, that the eight-year sentence has been served.

[2] The record is devoid of any additional information concerning the burglary of a vehicle and domestic assault charges, and the State did not mention either of those charges during the revocation hearing.

happened and gave the officer a description of the two men. Mr. Williams said that the man who knocked him down had on dark-colored clothing and the other man had on dark-colored pants and a teal green shirt.

On cross-examination, Mr. Williams agreed that he never saw a gun. He said that he had seen Defendant several times in his neighborhood before. He also said that he did not know if Defendant had any scars or tattoos. Mr. Williams agreed that the man wearing the teal shirt never "physically touched him" and that he was "pretty sure" that Defendant had on the dark-colored clothes but that he could not "be certain."

Clarksville Police Department Officer Binkley said that he was on patrol when he received a report of a "strong-arm" robbery that occurred on Rider Avenue near the Circle K.[3] Officer Binkley stated that the report described the suspects as "two black males. One taller, wearing dark clothes. One heavier set, wearing [] a light blue jacket." Officer Binkley said that approximately four or five minutes after receiving the report, he observed two men "matching that exact description" near the intersection of Cunningham Lane and Lafayette Road, which he said was about a quarter of a mile from the Circle K. Officer Binkley and Officer Brisbockey stopped and talked to the two men while other officers were contacting Mr. Williams. Officer Binkley identified the men as Defendant and Mr. Brown and said that Defendant was wearing dark clothing and that Mr. Brown had on "a really bright blue tealish-colored jacket, which was very just – I mean, it stood out." Officer Binkley said that Officer Bouldin, who had responded to the scene of the robbery, transported Mr. Williams to Cunningham Lane, where Officer Binkley had Defendant and Mr. Brown stand on the sidewalk while Mr. Williams rode past. Officer Binkley said he was notified that Mr. Williams positively identified Defendant and Mr. Brown as the two individuals that robbed him.

On cross-examination, Officer Binkley said that he did not find a gun, orange juice, or a pie when he arrested Defendant and Mr. Brown. Officer Binkley said that he did not notice any tattoos on Defendant the night he made the arrest. Officer Binkley was asked in court: "Can you see the tattoos on [Defendant's] face from here?" Officer Binkley answered: "Is there one right above his left eyebrow? I think that - - if that's a tattoo, yes, I can see that from here." On redirect, Officer Binkley said that he did not notice any

_____

[3] The record does not contain the first names of any of the officers involved in Defendant's arrest for the robbery of Mr. Williams.

tattoos before being "specifically asked to look at [Defendant's] face[.]" Officer Binkley said the tattoos were not "very easy" to see.

After closing arguments, the trial court placed the following findings and its decision on the record:

> And I understand that maybe the identification is perhaps -- and the [c]ourt recognizes that Mr. Williams would hesitate when he says, "I'm certain."
>
> Reference has been made to tattoos on the face of . . . Defendant. The record needs to reflect that Defendant is African American. Has a rather dark complexion.
>
> And I wanted to say that the tattoos are not perhaps as clearly visible as they might otherwise have been.
>
> The witness did testify as to the clothing worn by each of the individuals, which matched the identification of clothing as described by Officer Binkley.
>
> Furthermore, this was an event that occurred in the middle of the night outside. And, again, that would have an effect o[n] what individuals might or might not see.
>
> The proof further indicated that at the time of this event, September 1, 2022, . . . the witness did make an identification of . . . Defendant.
>
> Given the fact that it is a lower standard of proof, as it relates to violation of probation, I'm going to find that the State has carried its burden to establish that . . . Defendant did violate the terms of his probation.
>
> What's so disturbing is that this is a serious violation. It's a robbery, with the threat of personal injury or harm to the victim in this case.

- 4 -

There has been no proof as to the conduct of . . . Defendant, other than he just then had more than one other violation, I think, during the term.

But given the nature of this - - of the accusation, I'm going to find him to be in violation of the terms of his probation and order him to serve his sentence.

Defendant timely appealed.

## Analysis

Defendant claims that the trial court abused its discretion by revoking Defendant's probation for a new arrest because Defendant "was eventually acquitted of said new charges."[4] The State argues that the trial court acted within its discretion by revoking Defendant's probation and ordering him to serve his sentence in confinement.

### *Standard of Review*

If a trial court "places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record[,]" this court's standard of review is abuse of discretion with a presumption of reasonableness. *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). We will not disturb the trial court's ruling on appeal absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554-55 (Tenn. 2001) (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, a defendant must show that there is "no substantial evidence" in the record to support the trial court's determination that a violation of probation has occurred. *Id.* at 554. When the trial court fails to place its reasoning for a revocation decision on the record, an "appellate court may conduct a de novo review if the record is sufficiently developed for the court to do so, or the appellate court may remand the case to the trial court to make such findings." *Dagnan*, 641 S.W.3d at 759.

---

[4] Defendant filed a certified copy of the judgment for Count 1 and Count 3 of Case No. CC22-CR-1469 in the Appellate Court Clerk's Office. The judgment for Count 1 showed that on September 27, 2023, a Montgomery County jury found him not guilty of aggravated robbery. The judgment for Count 3 showed that the charge of criminal trespass was dismissed. This court ordered that the post-judgment facts evidenced by the above two judgments could be considered in this appeal.

***Decision to Revoke Probation***

Probation revocation decisions involve "a two-step consideration on the part of the trial court." *Id.* at 757. The court must first determine whether to revoke probation. *Id.* Upon a finding by a preponderance of the evidence that a defendant has violated a condition of his or her probation, a trial court may revoke probation. Tenn. Code Ann. § 40-35-311(d)(1) (2023); *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing Tenn. Code Ann. §§ 40-35-310, -311). The decision to revoke probation and the decision as to the proper consequence of revocation are "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. These distinct decisions do not, however, necessitate a separate hearing. *Id.*

In this case, the trial court found that the victim provided to law enforcement a physical description of the two men who robbed him and a description of the clothing worn by the two men. The court found that Officer Binkley, shortly after being notified of a 9-1-1 call concerning a robbery, observed two individuals walking near the location of the robbery who matched the physical description and were wearing clothing which matched the clothing described by the victim in the 9-1-1 call. Finally, the court found that even though the victim expressed some uncertainty in identifying Defendant in court, the victim identified Defendant at the scene where Defendant was apprehended. Based on these findings, the court determined that the State had carried its burden of establishing by a preponderance of the evidence that Defendant violated the terms of his probation.

In his brief, Defendant asserts that "the gist of [his] argument is that [Defendant]'s probation was revoked solely for a new criminal charge that, after the revocation, was nullified by a jury acquitting Defendant." Defendant acknowledges that the trial court had the discretion "to revoke [Defendant's] probation even in light of an acquittal of new charges." Defendant points out that the Court of Criminal Appeals "is an error correction court, not a policy making court and that but-for a change in policy . . . this court's hands are tied." Defendant argues, that "on the other hand," the supreme court is "a law-development court that can address the fundamental fairness aspect of revoking probation before trial, only to learn after-the-fact that [Defendant] was found 'not guilty' of the sole basis for the revocation." Defendant claims that he must first present his issue to this court "to open the path" to asking the supreme court "to address the public policy aspect of this case."

- 6 -

We agree with Defendant's argument that this court is an error-correcting intermediate court. *State v. Phifer*, No. M2013-01401-CCA-R3-CD, 2014 WL 4698499, at \*16 (Tenn. Crim. App. Sept. 23, 2014). We determine that the trial court, based on the evidence presented at the revocation hearing, placed sufficient findings and the reasons for its decisions to revoke Defendant's probation on the record. We, therefore, review the trial court's decision to revoke Defendant's probation under an abuse of discretion with a presumption of reasonableness. *Dagnan*, 641 S.W.3d at 759. To overcome that presumption, Defendant must show that there is "no substantial evidence" in the record to support the trial court's determination that a violation of probation has occurred. *Shaffer*, 45 S.W.3d at 554. Defendant has not done so. The subsequent not guilty jury verdict on the aggravated robbery charge and dismissal of the criminal trespass charge are "largely irrelevant" when there is some substantial proof "of the underlying facts that constitute a violation" presented at the revocation hearing. *State v. Boyd*, No. 03C01-9508-CC-00246, 1996 WL 634218, at \*1 (Tenn. Crim. App. Nov. 1, 1996); *See also State v. Gabriel*, No. M2002-01605-CCA-R3-CD, 2004 WL 1562551, at \*2 (Tenn. Crim. App. July 12, 2004) ("[A] revocation may be premised upon proven allegations of a violation warrant, even if the criminal charges arising from those allegations have been dismissed or the defendant has been acquitted at trial."); and *State v. Turnley*, No. 01C01-9403-CR-00094, 1994 WL 714227, at \*3 (Tenn. Crim. App. Dec. 22, 1994) ("The fact that the Defendant was not convicted of any of the offenses with which he was charged does not mandate dismissal of the probation violation warrant.").

### *Consequences upon Revocation of Probation*

Once a trial court determines that a defendant's probation should be revoked, the court must then "determine the appropriate consequence upon revocation." *Dagnan*, 641 S.W.3d at 757. The consequence may include: (1) confinement; (2) execution of the sentence as originally entered; (3) return of a defendant to probation on modified conditions; or (4) extension of a defendant's probationary period by up to two years. *State v. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at \*2 (Tenn. Crim. App. Feb. 4, 2014) (citing Tenn. Code Ann. §§ 40-35-308(a), -308(c), -310, -311(e); *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)). If a trial court "places sufficient findings and the reasons for its decisions . . . as to the consequence on the record[,]" this court's standard of review is abuse of discretion with a presumption of reasonableness. *Dagnan*, 641 S.W.3d at 759.

The trial court's findings concerning its decision to order "execution of the sentence as originally entered," although minimal, were stated on the record. The court based its decision on the seriousness of the offense, noting that it was "a robbery, with the threat of personal injury or harm to the victim in this case."

Although Defendant mentioned *Dagnan* in his brief, Defendant did not present an issue for review or put forth an argument claiming that the trial court breached its discretion in deciding the appropriate consequences for Defendant's violation. Tennessee Rule of Appellate Procedure 27(a)(4) requires that the appellant's brief contain a statement of the issues presented for review and an argument for each issue. Our supreme court has recently and emphatically stated that "an appellate court's authority 'generally will extend only to those issues presented for review.'" *State v. Bristol*, 654 S.W.3d 917, 923 (Tenn. 2022) (quoting Tenn. R. App. P. 13(b)). As the *Bristol* court made crystal clear, "[t]his 'principle of party presentation' is a defining feature of our adversarial justice system." *Id.* (quoting *United States v. Sineneng-Smith*, 590 U.S. ——, 140 S. Ct. 1575, 1579, 206 L.Ed.2d 866 (2020)). We will not extend our authority in this case to an issue Defendant has chosen not to raise. Even if we were to treat Defendant's reference to *Dagnan* as an issue for review, that issue is not supported by argument. Court of Criminal Appeals Rule10(b) plainly states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Any issue concerning the trial court's decision as to the consequence of the revocation is waived.

## Conclusion

The trial court did not abuse its discretion by revoking Defendant's probation. We affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE